HORATIO NYE v. HENRY MERRIAM.

*Fraud.   Action.   Damages.   Evidence.   Exemplary Damages.*

A fraud unaccompanied by damage is not actionable.

The defendant cheated the plaintiff in weighing some butter sold him by the
latter, and reported the false weight to the plaintiff, but afterwards the
plaintiff accepted from the defendant his note in payment for the butter, in.
a sum large enough to cover the contract price of the quantity actually
furnished. At the time the note was given the plaintiff had forgotten the
weight as originally reported by the defendant. *Held*, that in the absence
of proof that the plaintiff had been put to any trouble or expense by the
defendant's falsehood, he could not recover therefor.

Evidence that a party at a former trial of a cause claimed, through his coun-·
sel, to defend the suit upon grounds wholly inconsistent with his present.
testimony, is admissible as tending to discredit such testimony.

Exemplary damages are allowable in an action on the case for deceit, when
the evidence tends to show that the defendant wilfully purposed to deceive
and defraud the plaintiff.

CASE for fraud in cheating in weighing a quantity of butter
sold by the plaintiff to the defendant.

The defendant pleaded the general issue, with notice of special
matter in defence, and the case was tried by jury at the June
Term, 1861, in Orleans county, POLAND, CH. J., presiding.

The plaintiff's evidence tended to prove that about the middle
of October, 1858, he sold to the defendant eleven tubs of butter
at the price of eighteen and one-half cents per pound, to be
delivered by the plaintiff in Barton, the defendant paying the
plaintiff $33 towards the same before the delivery ; that about
the 1st of November, the plaintiff being away from home, the
defendant called for the butter, and the same was carried by
the plaintiff's father to the appointed place of delivery, where it
was weighed by the defendant, and the weight marked by the
defendant on the several tubs, and a list of the weights in figures
on a slip of paper given·to the plaintiff's father.

The plaintiff gave evidence tending to prove that the defen-
dant when he weighed the tubs full of butter placed his foot
under the edge of the platform of the scales, so as to make the

weight less than the true weight, and, when the empty tubs were weighed, placed his foot upon the edge of the scale, so as to make the tub appear to weigh more than the true weight, and that by these means, the weight of the butter as marked on the tubs, and given to the plaintiff's father, was less than the true weight of the butter, from two to three pounds upon each tub of the butter,—and that this was done designing to cheat and defraud the plaintiff; that immediately after the delivery of the plaintiff's butter, the defendant went to Boston with that and butter purchased by him of various other persons, and there sold the same, but did not return to Barton as was expected, and in the early part of December, information was received by the plaintiff that the defendant was about to proceed to California, without returning to Barton, or paying for the butter he had purchased on credit of the plaintiff and others ; that the plaintiff thereupon, for himself and two other persons, of whom the defendant had purchased butter on credit, went in pursuit of the defendant, first to New York city, from there to Boston, and finally to Lebanon, New Hampshire, where he found the defendant, and called on him for payment for the balance due him for his butter, and the two other men for whom he was acting ; that the defendant replied that he had no money, and could not pay.

In relation to what took place between the plaintiff and the defendant on this occasion, the plaintiff testified as follows :

" The defendant felt bad because he could not pay me. I said if he could not pay me he must give me his note, as I had nothing to show. He asked how much it was. I told him I did not know, but supposed he could tell. He said he could not, that his papers were in his valise or trunk. I said I supposed it was about sixty dollars ; he thought it was fifty-five or sixty dollars. I said I had been at considerable trouble hunting after him, and would call it sixty dollars. He assented, and gave me his note for sixty dollars, and I came home. I had lost the paper that my father gave me, and did not know what the figures were. There was not a word said between us about fraud in the weight, and no allusion to it whatever."

The defendant's evidence tended to prove that the plaintiff's

butter was fairly and truly weighed by the defendant, and no such cheat practised in weighing as the plaintiff claimed; that the true weight was marked on the tubs, and that the just balance due to the plaintiff from the defendant for the butter, after payment of the $33, was $55.25.

In relation to the transaction between the plaintiff and the defendant, at Lebanon, the defendant testified as follows:

"Last of December, or 1st of January, the plaintiff came to Lebanon, New Hampshire, where I was stopping, said he wanted to settle this butter matter,—wanted the money for his butter. I told him I had not got it. Then he said he wanted my note. We had considerable talk, though the plaintiff was in a hurry. We talked about his following me round. I asked what his object was. He said he wanted to catch me. I asked what he expected to do when he did. He said he did not know,—had made a fool of himself, and was sorry. I asked the plaintiff how much there was. He said he had not got it. I showed him from a memorandum book how much it was. He seemed satisfied. I then brought up the matter of the cheat; said I had understood he had threatened to prosecute me, and I wanted to have it settled, so I could come back to Barton and not have him jumping on to me. I said I would give him my note for $60 to settle it all up. He said that would be satisfactory, and I gave him my note for $60, and he left for the cars. The plaintiff said he had been to a good deal of expense, and had been to New York and Boston. The plaintiff asked if my father or brother would not sign the note with me. I told him I should not ask them to do so, for I owed them borrowed money. He said he should go and ask them. I said he could do so, and they could do as they pleased about it."

The defendant also introduced the testimony of several witnesses of admissions by the plaintiff that the note was given to cover and settle not only for the balance due for the butter, but also for his claim for being cheated by the defendant in the weight.

The plaintiff in his rebutting evidence, gave evidence tending to prove that the defendant was present at the trial of this cause before the justice, and testified, that at the interview between

him and the plaintiff at Lebanon, the plaintiff set up no claim that there had been any fraud in the weight of the butter, and that nothing was there said about it, and that Mr. Cooper, the defendant's counsel, in the presence of the defendant, put the defence wholly upon the ground that there was no fraud in the weight, and relied strongly upon the fact that when the plaintiff found the defendant at Lebanon, and took his note, he made no claim of the kind, as evidence that there was no fraud. The defendant's counsel objected to this evidence, so far as it went to show the grounds of defence and argument of Mr. Cooper on behalf of the defendant, but the court admitted the same, to which the defendant excepted.

On the defendant's cross-examination, he was enquired of by the plaintiff's counsel when, and to whom, and for how much he sold his butter in market, how much money he received, how he expended it, and as to his whereabouts from the time he went to Boston with the butter, till he was found by the plaintiff at Lebanon as above stated. The defendant's counsel objected to these inquiries, but they were allowed to be put, and answered by the defendant, to which the defendant excepted.

It was conceded by the plaintiff that before he met the defendant at Lebanon, he had had an intimation that the defendant had cheated him in the weight of the butter, but that he did not know the extent of it, nor the manner in which it was done.

The defendant's evidence tended to prove that prior to the interview at Lebanon, he had received from his family in Barton information that the plaintiff claimed he had cheated in the weight of the butter, and was threatening to prosecute him therefor.

It was conceded, also, that the note the defendant gave the plaintiff had never been paid, and that it was large enough to cover the full value of the butter at its true weight.

The defendant's counsel claimed and requested the court to instruct the jury, that if the defendant was thus guilty of cheating in the weight, still if the note he gave the plaintiff was large enough to cover the full amount of the butter received by the defendant from the plaintiff, at the price per pound agreed, it

operated as full payment and satisfaction for all the butter, and that the plaintiff therefore was not defrauded, and could not maintain this suit, and that this would be so, whether the matter of the fraud was alluded to at the time of the settlement, or not, and that even if it was as stated by the plaintiff, it would preclude a recovery.

The defendant also requested the court to charge the jury, "that if they found that the reason the plaintiff asked so large a note, and the reason the defendant gave so large a note, was the alleged fraud, although both avoided any discussion of the disagreeable subject, then no right of action accrued."

The court declined so to charge, but did charge the jury that if the plaintiff satisfied them that the defendant purposely cheated in weighing the butter, still if the plaintiff's claim for such fraud was mutually settled and adjusted by the parties, and included in said note, it would be a defence to the action, but that if the note was given merely in settlement of the balance due to the plaintiff for his butter, at its reported weight by the defendant, and with no reference whatever to the plaintiff's having been cheated by the defendant in the weight, then the plaintiff's right of action for such fraud was not thereby barred, even though the note given was large enough to cover the whole of the butter received by the defendant, at the contract price; that if the facts in reference to the settlement and giving of the note were just as stated by the plaintiff, they would not amount to a settlement of the fraud in the weight, if such existed.

The defendant excepted to the refusal to charge as requested, and to the charge as given on this point.

The defendant also claimed that, if there was a fraud in the weight and it was not settled, that the plaintiff could only recover for the deficiency in the weight of the butter caused by such cheat, at its value, or the contract price per pound. But the court charged that if the defendant purposely cheated in the weight, with design to defraud the plaintiff, the jury might give such exemplary damages as they should, under all the circumstances, consider just between the parties.

The defendant excepted to this direction also.

The jury gave a verdict for the plaintiff.

Nye *v.* Merriam.

*W. W. Grout* and *Benj. H. Steele,* for the defendant.

*J. S. Sartle* and *T. P. Redfield,* for the plaintiff.

ALDIS, J. The jury have found that the defendant attempted to cheat the plaintiff in the weight of his butter ; that he reported the weight to the plaintiff's father, and marked the tubs at from twenty to thirty pounds less than the true weight. The plaintiff was not present when the butter was weighed, and therefore had to rely on the paper the defendant gave his father containing the figures of the weight.

I. If the plaintiff settled with the defendant for the butter upon the basis of the weight as reported by the defendant, and afterwards discovered the fraud, he would, it is admitted, be entitled to recover for the fraud.

II. But the defendant claims that the case, standing on the plaintiff's testimony, shows that the plaintiff has suffered no damage ; that although the defendant may have attempted a fraud, yet in fact he has not accomplished his attempt ; but on the contrary has given his note to the plaintiff on settlement for more than the value of the butter at its true weight and contract price.

To sustain this action there must be *both fraud and damage.* A naked lie that causes no injury to another is not actionable. The lie must be relied upon, and must occasion damage.

The defendant claims, first, that the lie was not relied upon ; and secondly, that it did no damage, according to the plaintiff's own testimony ; and that this view of the case was not presented to the jury. To determine this point we must consider the plaintiff's testimony, and the charge of the court in regard to it.

The plaintiff, hearing that the defendant was about to go to California, and not to return to pay for the butter, went in search of him, and after going to New York and Boston, found the defendant at Lebanon, New Hampshire.

He called on the defendant for payment of the balance due for the butter. The defendant said he had no money. The plaintiff

replied : "if you can not pay me you must give me your note." "He, the defendant, asked how much it was. I told him I did not know, but supposed he could tell. He said that he could not, that his papers were in his valise. I said I supposed it was about sixty dollars. He thought it was fifty-five or sixty dollars."

It will be noticed that thus far nothing has been asked for by the plaintiff, or spoken of by either, but " payment of the balance due for the butter ;" and that what *that balance* was, was what neither could exactly tell,—the plaintiff supposing it "about sixty dollars," and the defendant " fifty-five or sixty dollars." The plaintiff then proceeds : " I said I had been at considerable trouble hunting after him, and would call it sixty dollars. He assented and gave me his note for sixty dollars." It is admitted that this note was large enough to cover the full amount of the butter at the contract price.

The plaintiff further said that he had lost the paper that his father gave him, and did not know what the figures were.

Now, upon this evidence it is clear that the defendant might justly have urged upon the jury, first, that the note was given solely for the balance due for the butter ; that the remark as to his trouble in hunting after the defendant was not intended by him, or understood by the defendant, as making those expenses, or that trouble a part of the consideration of the note, but only as entitling him equitably or morally to have the defendant's doubt whether the balance was fifty-five or sixty dollars, solved in the plaintiff's favor. If given solely for the balance due for the butter, and it covered the whole balance according to true weight and contract price, we are at a loss to see what damage occasioned by the original false statement of the defendant has accrued to the plaintiff. The plaintiff does not appear to have incurred any expense or trouble on account of the falsehood, or to have lost any thing by it. He did not go in search of the defendant on account of it. The attempt to cheat was not consummated by payment or settlement at the lower weight.

Had he known all the facts as to the attempt to cheat, he could not have asked for more than the sixty dollars as the balance due

Nye. v. Merriam.

him for the butter. Nor does it appear that the falsehood had worked him any injury for which he could have asked for further compensation.

Secondly, the defendant might also have justly insisted that to sustain this action the plaintiff must show that he *relied upon* the false statement in making the settlement.

The testimony of the plaintiff might fairly be claimed by the defendant as tending to show, that the plaintiff could not recollect what the statement originally made by the defendant as to the weight was ; that the plaintiff had lost the paper which the defendant gave to his father, and had forgotten its contents; that the defendant could not tell what the weight was, and did not renew or insist on the original falsehood ; and that both parties acted on their own knowledge and judgment as to the weight, uninfluenced by the false statement of the weight as originally made.

If the plaintiff did not recollect the false statement,—did not know and could not tell what the balance due for the butter was, according to the original falsehood, nor what the figures were which indicated the false weight, but claimed a balance sufficient to cover the whole and true weight, and received it on settlement, we are at a loss to see how he can claim to have been defrauded.

The court in the charge did not present the case to the jury in these two aspects, but seemed to hold that the original falsehood necessarily included damage, and gave a right of action for fraud in weighing, and that, unless such right to sue was discharged in the settlement, it remained in full vigor, and that the plaintiff's testimony did not show it settled. For the reasons above given we think the charge erroneous, and that the judgment must be reversed.

III. The evidence to show that the defendant on the justice trial by his counsel claimed to defend the suit upon grounds wholly inconsistent with his present testimony, was admissible.

IV. The inquiries of the defendant on cross-examination took rather a wide range ; but we think we can perceive that such inquiries might be proper, and even necessary, to show fraud, and to invalidate pretences made by the defendant.

V.   When, in an action on the case for deceit, the evidence tends to show that the defendant wilfully and intentionally purposed to deceive and defraud the plaintiff, then exemplary damages for such wilful fraud are allowable.   Without adverting particularly to the authorities upon this much discussed point, we deem it sufficient to say that we understand the law to have law—to have been long settled in this state, that wilful fraud, as well as malice, may be punished by exemplary damages in an action of tort.