SAMUEL STREIT & CO. *v.* CHESTER SANBORN.

*Promissory Note given for Intoxicating Liquor.*

Sec. 32, ch. 94, of the Gen. Sts., which provides that "no action of any kind shall be had or maintained in any court in this state, for the recovery or possession of intoxicating liquor, or the value thereof, except such as is sold or purchased in accordance with the provisions of this chapter," renders a promissory note given for intoxicating liquor not thus sold or purchased, *absolutely void,* so that a *bona fide* holder thereof for value and without notice, who takes it in the due course of business while current, can not recover thereon.

ASSUMPSIT in favor of the plaintiffs as indorsers, against the defendant as maker, of a promissory note, dated at Chelsea, Vt., March 1, 1870, for $137.16, payable to the order of Erwin & McKelsey, three months from date, with interest, at the Orange County National Bank, at said Chelsea. Plea, general issue, and trial by the court, December term, 1873, PECK, J., presiding.

The signature of defendant as maker of the note, was admitted, and the indorsement to plaintiffs proved, and the note read in evidence. It appeared that in 1869, and at the time in question, the payees of the note were partners, living and doing business in the city of New York, and dealers, among other things, in intoxicating liquors, and that defendant at the same time, resided in said Chelsea, and was engaged in the business of keeping a hotel there, and was not a town agent for the sale of intoxicating liquors, which was known to the payees and to their agent hereafter named, at the time in question ; that a little before Nov. 24, 1869, defendant, at said Chelsea, purchased of Erwin & McKelsey, through their agent, Knight, a barrel of whiskey for the purpose of selling it in his hotel without license, and contrary to law, which was soon after forwarded to him from their store in New York, in pursuance of said purchase. The defendant received the same on said contract, and not having paid therefor he soon after, and on or about the 24th of November, 1869, executed and delivered to Erwin & McKelsey, at said Chelsea, his promissory note of that date, for $133.75, the price of said

whiskey, payable to the order of Erwin & McKelsey, three months after date, with interest, at said bank.

At the time of the sale and delivery of the whiskey, Knight and the payees knew that the defendant purchased it for the purpose aforesaid. The last-mentioned note was, in due course of business, negotiated and indorsed by Erwin & McKelsey to the plaintiffs, of said city, while current, long before it became due, for a valuable consideration, and without any notice to plaintiffs as to what it was given for. The plaintiffs thereafter sent the note to said bank, and caused demand to be duly made of the maker at the time it became due, and it not having been paid, it was duly protested, and notice duly given to Erwin & McKelsey, whereby they became charged as indorsers; and thereupon the defendant requested an extension of time, to which the plaintiffs agreed, on condition that defendant would give them a new note for the amount due, including costs of protest, payable to the order of said Erwin & McKelsey, and by them indorsed, on three months, with interest, payable at said bank. Erwin & McKelsey having assented to this, defendant caused the note in suit to be drawn, executed it, and caused the cashier of said bank to forward it to New York, either to the plaintiffs, or to Erwin & McKelsey, for them to indorse and deliver to plaintiffs in pursuance of said arrangement. Immediately on its reaching New York, said note was indorsed by Erwin & McKelsey, and taken and retained by plaintiffs in place of, and as a substitute for, the former note; whereupon plaintiffs caused the former note to be given up to defendant, plaintiffs not then knowing what the consideration of the former note was. This was within two or three days after the date of the note in suit. The note in suit was kept by the plaintiffs, and sent by them to said bank for collection when due, when they caused demand of payment to be duly made of the maker, and it not being paid, they then and there caused the note to be duly protested, and notice thereof to be given to Erwin & McKelsey, whereby they became charged as indorsers. Some time after the note in suit was protested as aforesaid, and before the commencement of this suit, Erwin, one of the payees of the note, being about to come to Vermont, Streit, one of the plain-

tiffs, asked him to take the note, and call on the defendant to pay
it.   Erwin consented to do so.   Streit thereupon handed the note
to Erwin for that purpose, and Erwin came to Vermont as con-
templated, and saw the defendant, and told him that Streit wished
him to demand payment of the note.   Defendant would not and
did not pay it.   The defendant had been notified of the negotia-
tion of the first note, before it fell due, and also knew that the note
in suit belonged to the plaintiffs.   Erwin, as soon as he returned
to New York, which was in a very few days after the demand of
payment of defendant, returned the note to plaintiffs.   On the
occasion of taking the note from Streit as aforesaid, before com-
ing to Vermont with it, Erwin, without the knowledge or consent
of plaintiffs, erased the indorsement of Erwin & McKelsey upon
it, solely for safety in case of loss of the note while in his posses-
sion, and not for the purpose of affecting the liability of Erwin
& McKelsey as indorsers, or in any way changing the ownership
of the note, or the relation of the parties to it.   When Erwin re-
delivered the note to plaintiffs, he indorsed it as before, with the
name of his firm.

It appeared that after the plaintiffs discounted the first note as
aforesaid, said Erwin & McKelsey never had any interest in the
same, but the plaintiffs were the sole and *bona fide* owners
thereof.   The liability of Erwin & McKelsey as indorsers to
plaintiffs, still continued.

After the evidence was closed, the plaintiffs' counsel claimed
that the plaintiffs were entitled to recover upon the principle of the
law merchant, that a *bona fide* indorsee of a negotiable promissory
note, who receives it while current, for a valuable consideration,
without notice of any defence, is protected against a defence that
might have availed the maker as against the payee.   The defend-
ant's counsel claimed, that under our statute on the subject of
"*traffic in intoxicating drinks*," the principle claimed by plain-
tiffs' counsel did not apply ; that a negotiable promissory note
given for the sale of intoxicating liquor sold in violation of said
statute, is void everywhere, and equally void in the hands of such
innocent *bona fide* holder, as in the hands of the payee, or vendor
in the illegal sale, and that even if this was not so, the erasure of

the indorsement of Erwin & McKelsey, took this case out of the rule claimed by the plaintiffs' counsel; and that for both these reasons, the plaintiffs were not entitled to recover.

The court, although they held that the first note was invalid while in the hands of the payees, by reason of the illegality of the consideration, overruled the defendant's objections, and sustained the plaintiffs' position, and rendered judgment for the plaintiffs. Exceptions by the defendant.

*Hebards*, for the defendant, cited Gen. Sts. ch. 94, §§ 9, 32; *Pindar* v. *Barlow*, 31 Vt. 529; *Converse* v. *Foster*, 32 Vt. 828; *Howe et al.* v. *Stewart*, 40 Vt. 145; *Aiken* v. *Blaisdell*, 41 Vt. 655; *Vallett* v. *Parker*, 6 Wend. 615; *City Bank* v. *Barnard et al.* 1 Hall (N. Y. City Superior Court), 70; *Bowyer* v. *Brampton*, 2 Stra. 1141; Chit. Bills (10 Am. ed.), 90.

*C. W. Clarke*, for the plaintiffs, cited *Backman* v. *Wright*, 27 Vt. 187; *Powers* v. *Ball*, 27 Vt. 662; *Pindar* v. *Barlow*, 31 Vt. 529; *Backman* v. *Muzzy*, 31 Vt. 547; *Converse* v. *Foster*, 32 Vt. 828; *Erwin & McKelsey* v. *Stafford*, 45 Vt. 390; *Springfield Bank* v. *Merrick*, 14 Mass. 332; *Russell* v. *De Grand*, 15 Mass. 38; *Wheeler* v. *Russell*, 17 Mass. 280; *City Bank* v. *Barnard*, 1 Hall, 70; *Vallett* v. *Parker*, 6 Wend. 615; *Norris* v. *Langley*, 19 N. H. 423; *Wyatt* v. *Bulmer*, 2 Esp. 538; *Ackland* v. *Pearce*, 2 Camp. 599; *Steers* v. *Laskley*, 6 T. R. 61; *Brown* v. *Turner*, 7 T. R. 630; *Greenland* v. *Dyer*, 2 M. & R. 422; *Edwards* v. *Dick*, 4 B. & Ald. 212; *Day* v. *Stuart*, 6 Bing. 109; 1 Wheat. Selw. N. P. 388, and cases cited; Chit. Bills, 90, 92; 2 Bac. Ab. 621; 3 Kent Com. 79, 80; Story Prom. Notes, § 192, and note 1; Story Bills, § 189; Parsons Bills & Notes, 279, and cases cited in note 2.

The opinion of the court was delivered by

ROYCE, J. The consideration for the note for which the note declared upon was given, was intoxicating liquor sold by the payees of the note, through their agent, Knight, under such circumstances that it is conceded that as between the parties to the

note, the transaction was of such an illegal character that the payees could not enforce its collection. The note was in due course of business negotiated and indorsed to the plaintiffs while current, for a valuable consideration, and without any notice as to what it was given for. The question presented upon the above statement of facts, is, whether the plaintiffs' right to maintain their action, is defeated by § 32, ch. 94, of the Gen. Sts. Said section declares that "no action of any kind shall be had or maintained in any court in this state, for the recovery or possession of intoxicating liquor, or the value thereof, except such as is sold or purchased in accordance with the provisions of this chapter." This act was passed in 1852, and previous to that time, the law regulating the traffic in intoxicating drinks did not contain any such provision. It simply made the sale of intoxicating drinks by persons not authorized, illegal, and inflicted penalties upon parties making such sales.

The notes declared upon in the cases cited and relied upon by the plaintiffs, of *Pindar* v. *Barlow*, 31 Vt. 529, and *Converse* v. *Foster*, 32 Vt. 828, were given previous to the passage of the act of 1852, and the question presented for adjudication in those cases was, whether, as against a *bona fide* holder for value without notice, the defendant could avail himself of the illegality of the consideration as a defence to the notes. The court held, that in a suit between the parties to a note, the illegality of the consideration might be set up as a defence ; but that as against a *bona fide* holder of such a note, who acquired it while current, for value, and without notice, the illegality of the consideration would not constitute a defence. It will be seen by reference to those cases, that the construction to be given to the act of 1852 was not presented, or necessary to the determination of the issue made. And while the opinions expressed by the learned judges who delivered the respective opinions in those cases, as to what the rights of the holders of such paper might be under the act of 1852, are entitled to great consideration, we cannot regard either as an authority upon the construction to be given to the act. The rule that where a transaction is declared by statute to be illegal, and that all securities given in consideration of such illegal trans-

action are void, is too familiar to require the citation of authorities in its support. And courts will no more enforce such securities for the benefit of *bona fide* holders, than for the benefit of a party to the transaction. The right of recovery, therefore, in this case, must depend upon the construction to be given to the act of 1852. It has been claimed in argument, that inasmuch as the statute does not in express terms make securities given for intoxicating liquors illegally sold, void, that they are not to be held as void, or voidable, except as between the parties to the illegal sale. But we understand that where the language employed in a statute is equivalent to an express declaration that such securities are void, it is all that is required. By enacting that no action should be had or maintained to recover for the value of intoxicating liquors, except such as should be sold in accordance with the provisions of the law regulating its sale, it is clear that the legislature intended, and have in effect rendered, such securities worthless to the possessor, for the reason that no court in the state can entertain any suit to enforce the obligation of any such security. And we hold that the obvious and natural import of the language made use of in this statute, without resorting to any forced or subtle construction, is, to make all such securities absolutely void. If there was any ambiguity in the language or intent of the statute, it would be the duty of the court to inquire what the law upon the subject had been, and what change in it was intended to be made by the statute we are now considering. If the subject is examined in this view, it will be found that the legislation for many years previous to 1852, upon the subject of the traffic in intoxicating liquors, had all been aimed at its suppression, except in the manner provided by law; and the object sought to be accomplished was, to check the growing evil of intemperance. Hence, they declared the traffic in it by unauthorized persons, to be illegal; and the courts uniformly held, that as between the parties to any such transaction, the consideration for the promise to pay, was open to inquiry, and that no recovery could be had where the consideration for the promise rested upon such a transaction. Parties engaged in such illegal transactions, then resorted to the expedient of negotiating the

notes received by them upon such sales ; and the court held in the cases above cited, and upon long-established and universally well-recognized principles of mercantile law, that in the hands of *bona-fide* holders without notice, the consideration for such notes could not be inquired into.

It is probable that knowledge of these decisions, and that parties were thus enabled to defeat the plain spirit and intent of the law, prompted the legislature of 1852 ; and unless the act of that year is to receive the construction we have given to it, no useful purpose was accomplished by its enactment, for it left the law regulating the rights of the holders of such paper, just as it stood before.   The statute of Massachusetts referred to by the court in *Pindar* v. *Barlow* and *Converse* v. *Foster*, contains a provision that all securities given in whole or in part for the price of liquor sold in violation of law, should be void against all persons holding the same with notice of such illegal consideration, either direct or implied by law ; and under that statute, their courts may well have held that negotiable paper given upon such a consideration, was good in the hands of a *bona-fide* holder without notice.

We have no occasion to review the numerous cases which have been cited by the learned counsel for the plaintiffs.   Their authority has been expressly recognized in the cases above referred to, and numerous others in this state.   They are not applicable here, for the reason, that under our statute, we hold that this note is absolutely void.   By holding otherwise, the court would be placed in the strange position of sustaining by its decision, the validity of the note, when the legislature had deprived the holder of all legal remedy in the courts of the state for its collection.   By permitting a recovery in this case, we think it might be justly said that the judiciary power had defeated the manifest intent of the legislature.

The judgment of the county court is reversed, and judgment rendered for the defendant.