PHINEAS D. PIERCE, CHESTER DOWNER, AND A. W. KEN-
NEY *v.* CAROLINE S. KIBBEE.*

[IN CHANCERY.]

*Promissory Note.   Consideration.   Bona-Fide Purchaser for*
*Value.   Composition of Felony.*

A note and mortgage given in lieu of notes and mortgage that were given in part to
suppress a prosecution for forgery, are not enforceable by an assignee of the payee
who took for value, but with notice of the illegality of the consideration.

PETITION FOR FORECLOSURE.   The petition alleged execution of a
mortgage to Nelson L. Boyden, conditioned for payment of a
promissory note for $4,215.40, signed by J. R. & A. B. Crapo, R.
B. Goss, and the defendant; assignment thereof by Boyden to the
petitioner Downer; assignment by Downer to Mariot G. Howe;
assignment by Howe to the petitioner Pierce; and ownership of an
interest therein by Downer and the petitioner Kenney.   The pe-
tion was answered, the answer traversed, and testimony taken.

From the answer and proofs it appeared that in the spring of
1871, J. R. Crapo, Goss, and the defendant's son, Charles Kibbee,
while at work as soliciting agents and salesmen for Noyes & Jen-
kins, of Cambridgeport, Massachusetts, dealers in lightning-rods,
took certain notes for rods sold, which the ostensible signers as-
serted to be forgeries.   Noyes & Jenkins procured the three to
be arrested and lodged in jail on a complaint for forgery.   In a
few days thereafter they were released—Crapo and Goss on bail,
and Kibbee by discontinuance as to him.   It was then agreed be-
tween Crapo and Goss, Noyes & Jenkins, and the prosecuting at-
torney, that if Crapo and Goss would purchase said notes at a
stated price, and give well-secured notes therefor, proceedings for
forgery should be discontinued.   Crapo and Goss then came to
Vermont, where they resided, and attempted to get the required

*Decided at the February Term, 1878.

security by mortgaging their property, but were unsuccessful. Crapo thereupon went to the defendant, and, by falsely representing to her that he was sent to her by her son with the request that, to save him from further prosecution and imprisonment, she would sign notes as surety with him, Crapo, and another, to the amount of $4,126, and execute a mortgage of her homestead as security for the payment thereof, procured her to execute such notes and mortgage, which he delivered to Noyes & Jenkins in performance of the agreement with them. Certain of those notes became due, and Crapo and Goss were pressed for payment. Thereupon through Crapo the notes and mortgage were offered for sale to Downer, and he and Kenney had talk about buying them, but having heard of the prosecution, and fearing that it might be claimed that they were given in settlement of it, and that they could not be collected, they refused to purchase. But it was finally arranged that if a new note for the amount of the old ones, and a new mortgage to secure the same, were given by the same parties to Boyden, who was the attorney of Noyes & Jenkins to sell the original notes and mortgage, they would purchase them. Crapo accordingly again applied to the defendant, who in the meantime had learned of the fraud by which the first notes and mortgage were obtained, and requested her to give a new note and mortgage in lieu of the old ones, telling her the giving of them would not increase her liability. She took advice of her friends, and finally executed a new note and mortgage to Boyden as requested, and they are the note and mortgage in question. Downer and Kenney thereupon paid Boyden the face value of the note, less six per cent., and Boyden assigned to Downer, who assigned to Howe, who assigned to Pierce, as alleged.

The evidence tended to show that the assignments from Downer to Howe and from Howe to Pierce were made for the benefit and accommodation of Downer and Kenney, to enable them either to evade repayment of usury or to facilitate collection of the note or foreclosure of the mortgage by placing the holder in the position of a holder for value without notice, Pierce having given his note therefor under an agreement to pay to Downer and Kenney only what he might recover on the mortgage.

Pierce et als. *v.* Kibbee.

Other facts relative to the extent of the interest of Downer and Kenney in the note and mortage in question, and relative to their good faith in purchasing and holding the notes, are stated in the opinion of the court.

At the December Term, 1877, the court, BARRETT, Chancellor, dismissed the bill, *pro forma,* without hearing.

Appeal by the petitioners.

*W. C. French,* for the petitioners, cited *Pendar* v. *Kelley*, 48 Vt. 27.

*J. J. Wilson,* for the defendant.

The opinion of the court was delivered by

DUNTON, J. The mortgage and note in suit were given as substitutes for a certain other mortgage and notes, given for the agreed price of certain notes called " lightning-rod notes," purchased by Crapo and Goss of Noyes and Jenkins, and also to suppress a criminal prosecution for forgery against Crapo and Goss, pending in Massachusetts. The consideration for the original notes being in part illegal, it cannot be questioned but that the notes themselves where invalid while in the hands of the original payees. See *Streit & Co.* v. *Sanborn,* 47 Vt. 702 ; *Hinesburgh* v. *Sumner,* 9 Vt. 23 ; *Bowen* v. *Buck,* 28 Vt. 308 ; *Smith* v. *Pinney,* 32 Vt. 282 ; *Converse* v. *Foster,* Ib. 828.

Contracts made in the composition of felony are void, and courts will neither aid in enforcing them, nor in the recovery of money paid in the performance of them. Says AMES, J., in *Atwood* v. *Fisk,* 101 Mass. 364 : " The meaning of the familiar maxim, ' *In pari delicto potior est conditio defendentis,*' is simply that the law leaves the parties exactly where they stood ; not that it prefers the defendant to the plaintiff, but that it will not recognize a right of action founded on the illegal contract in favor of either party against the other. They must settle their own questions, in such cases, without the aid of the courts." Also *Laing* v. *McCall,* 50 Vt. 657.

It has been held by repeated decisions that a note given as a substitute for, or in renewal of, a note that was illegal, is also

71

invalid between the original parties. *Preston* v. *Jackson*, 2 Stark. 237 ; *Hay* v. *Ayling*, 16 Q. B. 423 ; *Holden* v. *Cosgrove*, 12 Gray, 216 ; *Chenery* v. *Barker*, 12 Gray, 345 ; 1 Daniel Negotiable Instruments, 163. Therefore, were this suit in favor of Noyes and Jenkins, there would be no question but that the petition should be dismissed. Do Downer and Kenney, the complainants in interest, stand in the situation of *bona-fide* holders of the note in suit for a valuable consideration before it became due without notice of its illegality as between the original parties thereto ? We think not. The evidence strongly tends to show that they knew of its infirmity and attempted to evade the effect of it. They admit that they had heard of the criminal prosecution in Massachusetts against Crapo and Goss, and feared it might be claimed that the original notes and mortgage first offered them, were given to settle the same, and therefore were advised by counsel before purchasing, to require a new note and mortgage to be executed to Boyden, who was the attorney of Noyes and Jenkins to negotiate a sale of said original notes and mortgage. They also had the mortgage in suit assigned by Boyden to Downer, and by the latter to. Howe, and by Howe to Pierce, one of the complainants, taking the notes of Howe and Pierce as the apparent or pretended consideration for such assignments, with the understanding that nothing was to be paid upon them except what should be collected upon the note in suit, which also had been purchased at a discount.

But if Downer and Kenney did not have actual knowledge of the illegality of the original notes and mortgage to Noyes and Jenkins, it was because they did not want to know it ; for the facts and circumstances disclosed by the evidence, to say the least, were sufficient to have put them on inquiry. This is equivalent to notice of such facts as they might be presumed to have learned upon reasonable inquiry, and is therefore sufficient to charge them with the consequences of actual knowledge of the illegality of said original notes and mortgage. See *Roth* v. *Colvin*, 32 Vt. 125 ; *Gould* v. *Stevens*, 43 Vt. 125 ; *McDaniels* v. *Flower Brook Manufacturing Co.* 22 Vt. 684 ; *Sandford* v. *Norton*, 14 Vt. 234.

It being admitted law that a party taking a note with knowledge of its infirmity, takes it subject to all defences and equities to which it was liable in the hands of the original payee, therefore the complainants are in no better condition to enforce by suit the collection of said substituted note than Noyes and Jenkins.

In equity a mortgage is regarded as a mere security for a debt or obligation ; and all defences except the Statute of Limitations that can be made to the debt or obligation, can also be made to the mortgage. *Vinton* v. *King*, 4 Allen, 562.

The agreements subsequently executed by the defendant and others, being without consideration, do not affect her liability upon the note and mortgage in suit.

The decree of the Court of Chancery dismissing the petition with costs, is affirmed, and the cause remanded.