## STATE

v.

## ROSÉ FOURNIER AND EFFIE COX.

January Term, 1896.

*Joint trial in discretion of Court.    Evidence.    Expert
testimony.    Declaration as to health.
Charge of Court.*

1.  Whether several persons jointly indicted shall be tried together
    is within the discretion of the trial court.

2.  Upon the joint trial of several respondents each has six peremp-
    tory challenges, and the State, it would seem, has two per-
    emptory challenges for each respondent.

3.  Upon the joint trial of several respondents evidence admissible
    as against one and not the other, should be received with
    proper instructions to the jury.

4.  A medical expert who has examined the condition of the
    stomach and intestines, may give an opinion as to the cause
    of death based upon the examination and the assumption
    that a certain quantity of tartar emetic was found in the
    stomach.

5.  What a person says about his health, at the time he says it, is
    admissible as original evidence, but what he says about the
    condition of his health at some previous time is hearsay and
    inadmissible.

6.  As bearing upon the condition of a person's health, the state-
    ment to a non-medical witness that " he was sick of living ;
    didn't care whether he lived or not," was held inadmissible.

7.  It cannot be shown for the purpose of impeaching the general
    credit of a witness, that she formerly kept a house of ill
    fame, was indicted for it, and forfeited her bail.

8.   It was not error in the charge to say to the jury, in connection
     with the testimony of certain witnesses for the State, that
     under V. S., s. 4894, if a person willfully and corruptly bear
     false testimony with intent to take away the life of a person,
     and thereby causes the life of such a person to be taken, the
     person so testifying shall suffer the punishment of death.

9.   The fact that a party or witness is not shown to be cognizant
     of a particular legal principle, is no reason why the court
     should not state that principle to the jury as bearing upon
     the probable conduct of such party or witness.

Joint indictment of the respondent Rose Fournier and one
Effie Cox for the murder of the respondent's husband by
poisoning. Plea, not guilty. Trial by jury at the September
term, 1894, Chittenden county, THOMPSON, J., presiding.
Verdict of manslaughter against both respondents. The re-
spondent Fournier excepts.

*Charles T. Barney* for the respondent.

The respondent was entitled to a separate trial as a matter
of legal right.    *People* v. *McIntyre*, 1 Parker, C. C., 371 ;
*People* v. *Vermilyea*, 7 Cowen, 108 and 109; *Horn* v.
*State*, 37 Ga., 80; Wharton Crim. Pl. (8 ed.) s. 302;
*White* v. *People*, 81 Ill. 333 ; *Roach* v. *State*, 5 Cal. 39 ;
*State* v. *Desroche*, 47 La. Ann. 651.

The State was entitled to but two peremptory challenges.
*Savage* v. *State*, 18 Fla. 951 ; *Wiggins* v. *State*, 1 Lea.
738.

Testimony not admissible as to the respondent Fournier
should not have been received.    *Watson* v. *State*, 16 Lea.
604 ; *State* v. *Meader*, 54 Vt. 126 ;   *C. & P. R. R. Co.* v.
*Baxter*, 32 Vt. 80 ; *Wood* v. *Willard*, 36 Vt. 82 ; *Sterling*
v. *Sterling*, 41 Vt. 80 ; *Draper* v. *State*, 22 Texas 400.

A hypothetical question must be based upon what has al-
ready been proved in the case.   1 Greenl. Ev. (15 ed.)
s. 440; *Jameson* v. *Drinkald*, 12 Moore 148; *Armen-
daiz* v. *Stillman*, 67 Texas 458; *Hathaway's Admr.* v.

*Nat. L. Ins. Co.*, 48 Vt. 335 ; *Hastings* v. *Rider*, 99 Mass. 624; *Heald* v. *Thing*, 45 Me. 392 ; *Reber* v. *Herring*, 115 Pa. St. 608 ; *Reynolds* v. *Robinson*, 64 N. Y. 589 ; 1 Rice Ev. 358 ; *Deig* v. *Morehead*, 110 Ind. 451 ; *Güetig* v. *State*, 66 Ind. 94 ; *Hurst* v. *C. R. I. & P. R. Co.*, 49 Ia. 78 ; *Keyser* v. *Chicago & G. T. R. Co.* 66 Mich. 390 ; *Muldowney* v. *Ill. C. R. Co.*, 39 Ia. 622 ; *Hathorn* v. *King*, 8 Mass. 371 ; *Dickerson* v. *Barber*, 9 Mass. 225.

The declarations of the deceased as to the condition of his health were admissible. Starkie Ev. (9th ed.) 89 ; 1 Rice Ev. 389 ; *Travelers Ins. Co.* v. *Mosley*, 75 U. S. 397 ; *Leahy* v. *Cass & C. Rd. Co.*, 97 Mo. 165 ; *Harriman* v. *Stow*, 57 Mo. 93 ; *Brownell* v. *Pac. Rd. Co.*, 47 Mo. 240 ; *Hanover Rd. Co.* v. *Coyle*, 55 Pa. 396.

*R. E. Brown*, State's Attorney, for the State.

The matter of a separate trial rests in the discretion of the court. Bish. New Crim. Pro., s. 1018 ; *State* v. *Stoughton et als.*, 51 Vt. 364 ; *U. S.* v. *Marchant et als.*, 12 Wheat. 480 ; *Com.* v. *Robinson et als.*, 1 Gray 555 ; *Whitehead et als.* v. *The State*, 10 Ohio St. 449 ; *Bixbe* v. *The State*, 6 Ohio 86 ; *Com.* v. *Miller*, 150 Mass. 69 ; *Comm.* v. *James*, 99 Mass. 438 ; *State* v. *Soper*, 16 Me. 293 ; *State* v. *Conley*, 39 Me 78 ; *State* v. *Dodson*, 14 S. C. 628 ; *Spies* v. *The People*, 122 Ill. 265 ; *Maton et als.* v. *The People*, 15 Ill. 536 ; *Thompson* v. *The State*, 25 Ala. 41 ; *Mask et als.* v. *The State*, 32 Miss. 396 ; *U. S.* v. *Gibbert*, 2 Sumner 63.

The State was entitled to two peremptory challenges for each respondent. *Spies et als.* v. *The People*, 122 Ill. 265.

Whatever was admissible against either respondent should have been received. *State* v. *Fuller et al.*, 39 Vt. 74 ; *State* v. *Cram*, 67 Vt. 650.

Evidence affecting the character of the witness for chastity cannot be used upon her reputation for truth and veracity.

*Morse* v. *Pieno*, 4 Vt. 281 ; *State* v. *Smith*, 7 Vt. 141 ; *Spears* v. *Forrest*, 15 Vt. 436 ; 2 Rice Ev. 376.

TAFT, J.   The respondent was indicted jointly with Effie Cox, alias Effie Whalen, for the murder of Alfred Fournier, and was convicted of manslaughter.

Ten exceptions to the ruling of the county court were taken during the trial, and have been argued in behalf of the respondent.

I.   Before the jury were empaneled the respondent moved for a separate trial and urged, in support of the motion, that upon trial she would be prejudiced by the introduction of testimony, admissible against her co-respondent, tending to show certain acts and declarations of the latter, that would not be admissible against this respondent were she tried separately, and the only certain way to avoid such prejudice was for the court to order separate trials.   The motion was denied, and it is now argued that such denial was error.   In *State* v. *Stoughton*, 51 Vt. 562, the question arose as to how many peremptory challenges each respondent in a joint trial was entitled to, and in the discussion of the question the court, per Royce, J., said : " The respondents were not entitled to separate trials as a legal right.   It was discretionary with the court whether to grant them separate trials or not." In *State* v. *Meaker*, 54 Vt. 112, the question was raised and it was held by the court that granting separate trials to respondents, jointly indicted, was a matter of discretion.   After the jury was empaneled in that case one of the respondents withdrew his plea of not guilty, pleaded guilty and the other respondent was tried alone.   When the jury were being empaneled three jurors were peremptorily challenged by the respondent who subsequently pleaded guilty, and the other respondent objected to the discharge of the three so peremptorily challenged, the objection was overruled, the three jurors discharged and an exception taken.   This

was the only question as to separate trials that remained and it was ruled against the respondent. To this extent the question has been adjudicated by this court. It is now fairly before us, and we hold that when two or more persons are jointly charged in the same indictment with a criminal offence they have no right by law to be tried separately, but such separate trial is within the discretion of the trial court. This was so held, and the reasons therefor fully stated and considered by Mr. Justice Story in *U. S.* v. *Marchant*, 12 Wheaton 480; and see the Anarchists' case, *Spies* v. *People*, 122 Ill. 265. Nothing is disclosed by the record in this case to indicate that the discretion of the county court in denying the motion, was not wisely exercised. If it is not in any case, what remedy is available to the respondent we are not called upon to discuss.

II. When the jurors were being empaneled the court ruled that each respondent was entitled to exercise six peremptory challenges, following *State* v. *Stoughton*, 51 Vt. 364; and that the State was entitled to exercise two such challenges as to each respondent, under V. S., s. 1914, which reads: "In criminal prosecutions one-third the number of peremptory challenges to the jurors shall be allowed to the state which are by law allowed the respondent, etc." The above ruling, which was excepted to, was in accord with the words and spirit of the statute. The state, in fact challenged but two jurors peremptorily, and the respondent but three, therefore the latter was not harmed by the ruling, if erroneous. All that a party is entitled to is to be tried by an impartial jury. The right of challenge is not the right to select, but to exclude. It does not enable the prisoner to say who shall try him, but to say who shall not. The accused does not complain that she was not tried by an impartial jury; it is not even suggested that any one juror serving upon the panel was not competent and impartial. She has

no reason to complain of any ruling made by the court in regard to the selection of the panel.

III. Certain testimony was received in evidence. which was admitted against the respondent Cox only, and the jury were instructed at the time that it was not admissible against this respondent. The testimony was objected to and it was admitted under exception taken by the respondent Fournier, and this was the only exception taken during the trial in respect to such testimony. This question appears in *State* v. *Fuller and Willey*, 39 Vt. 74. In detailing the confessions of Fuller, a witness was allowed, against.an objection by the respondent Willey, to repeat portions of the confession which tended to implicate Willey, and the court ruled that the whole confession must be received as Fuller made it, but it would be evidence only against him, and so instructed the jury, and the defendent Willey excepted. After discussing another question, which required a reversal of the judgment, the court said: "In other respects we think the county court committed no error." The same question was made in the homicide case of *State* v. *Cram*, 67 Vt. 650. The state offered in evidence the declarations of Bow, made after the alleged killing, and not in the presence of the respondent. The respondent objected and excepted for that they were not admissible as against him. The evidence was admitted as against Bow and the jury were instructed that they must consider it only as against him. This point was strongly urged by the respondent's counsel. Munson, J., in the opinion said: "Whatever was admissible against one was admissible on the trial of both, under proper restrictions as to its effect. This included evidence of any statements of Bow which had a legitimate tendency to incriminate him, even though of a character prejudicial to Cram." It may be noted that in this case neither of the respondents asked for a separate trial and the two were tried together, but this fact does not affect the question under consideration.

IV.    Doctor Linsley, conceded to be an expert, was improved as a witness for the state.   He testified that he had made a microscopical examination of the stomach, and intestines, and the contents thereof, and his testimony tended to show that the examination was minute and much in detail; he testified as to the condition of the stomach and intestines and the different portions thereof, and was asked his opinion, based upon his examination, and assuming that certain quantities of tartar emetic were found after death in the stomach and in the intestines of Alfred Fournier, as to what caused his death.   He answered, " The presence of tartar emetic."   This testimony was objected to generally, and it is now insisted that the question was not properly limited. This exception is not well taken; his opinion was limited to his examination as testified to by him; the question was a direct one : " Have you an opinion, based upon your examination?" with the assumption as above stated, as to the quantity of tartar emetic so found in the stomach, etc.   The question was based strictly upon the facts which his testimony tended to show, in connection with the assumed quantity of poison which the other testimony in the case tended to establish.

V.    It was proposed to show by the witness Dodds what the deceased said about his sickness one week prior to the time he was taken ill, the Tuesday preceding his death.   The nature, character, and extent of the sickness of the deceased for some time prior to his death, were material questions upon the trial.   Whatever the deceased said about his health at the time he said it, was admissible, and it is not claimed any error was committed in the exclusion of such testimony.   The court admitted testimony tending to show the deceased's statements as to his condition at the time such statements were made, when it was offered by the state, and upon objection by the respondent excluded the narration of what his past health had been.   The respondent's counsel

now insists that, while this was a correct ruling when the
testimony was offered by the state, it was admissible when
offered by the defendants on the ground that the respondent
had a right to have stated all the statements which the de-
ceased made.   The respondent did have the right to have
given in evidence all the statements made by the deceased
upon the subject upon which the witness testified, i. e., the
then present condition of the deceased, but had no right to
have stated what he said as to what his health had been in
the past.   The narration by the deceased of what his health
had been in the past, what it was the week before or morning
before, was hearsay and inadmissible.   Neither was it legiti-
mate as a part of the *res gestæ.*

VI.   The witness Guyette testified that he saw the de-
ceased, that the deceased did not feel well, had trouble with
his stomach and bowels ; it was proposed to show by him
that at this time the deceased, said " he was sick of living ;
didn't care whether he lived or not." This was excluded and,
under the circumstances, properly.   A witness not a physi-
cian may testify as to the physical condition of a person,
how the person appeared.   *Knight* v. *Smithe*, 57 Vt. 529.
It is the present state of a person's health which can be thus
proved.   *State* v. *Howard*, 32 Vt. 380.   Such declarations,
when made in the line of inquiry that a physician would natur-
ally be making to ascertain the then present condition of the
patient, might be material and have an important bearing
upon the point, as tending to show the nature and extent of
the disease from which the physician was called upon to re-
lieve his patient.   This was the principle which governed the
admission of such testimony in *Hathaway* v. *National Life
Ins. Co.*, 48 Vt. 335, but the evidence detailed in the bill of
exceptions, as the witness was not a physician, is not within
that rule.   It does not appear that it was claimed the deceased
committed suicide and we cannot presume that that question
was in the case, in order to find error in excluding the testi-

mony.   We are not called upon to consider its admissibility upon that question, as it is not before us.

VII and VIII.   For the purpose of impeaching the state witnesses, Edward Howe and his wife, Fannie, formerly Fannie Borette, the respondent offered to show that prior to their marriage, Fannie kept a house of ill-fame, the witness Howe lived in it, knew its character and acted in its behalf; that subsequently Fannie was held to bail upon a charge of keeping the house, forfeited her bonds and paid them. This offer was for the purpose of a general impeachment of the witnesses. The test of impeachment is, what is the character or general reputation of the witness for truth and veracity, and this rule has been universally adhered to in this state.   It has been held incompetent upon that question to show that a witness was a common prostitute.   *Moore* v. *Pineo*, 4 Vt. 281 ; *State* v. *Smith*, 7 Vt. 141, and again in *Spears* v. *Forrest*, 15 Vt. 435, in which case Bennett, J., said : " The question cannot be considered with us as an open one." In *Crane* v. *Thayer*, 18 Vt. 162, it was proposed to impeach a witness by showing that he had the reputation of being a counterfeiter, and it was argued that a " notorious counterfeiter is *ex vi termini*, a notorious liar " ; the testimony was excluded and it was held properly so.   Much latitude is allowed counsel in cross-examination of witnesses in regard to the facts which bear directly upon their present character and moral principles and therefore essential to the due estimation of their testimony by the jury ; questions like whether the witness has ever been confined in the State prison, and similar ones, are often allowed, although collateral to the main issue but relevant to the character of the witness.   But such cross-examination is, to a great extent, within the discretion of the trial court, and is for that court to say how far such cross-examination shall proceed ; we do not consider this is the question before us, but that the facts proposed to be shown were for the purpose of the general impeachment

of the witnesses' characters, the test of which, as we have before said, is, what is the witness' reputation for truth and veracity?

IX.   The ninth exception related to the charge of the court in reference to the testimony of certain witnesses.   V. S., s. 4894, provides that if a person wilfully and corruptly bears false testimony with intent to take away the life of a person, and thereby causes the life of such person to be taken, the person so testifying shall suffer the punishment of death.   This statute had been called to the attention of the jury by the counsel for the state, and the court stated to the jury that such was the law.   It is not claimed that the court stated the law inaccurately, but it is insisted that such instruction was erroneous unless it appeared that the witnesses knew what the statute was in that respect.   If the witnesses lacked such knowledge that fact might have been urged before the jury with great force but there was no error in the instruction.   Nothing was said to the jury that the testimony of such witnesses should be received with greater consideration, or that more credit should be given to it than to that of other witnesses.   The credit to be given to the witnesses was left wholly to the jury, and it was proper for the court to call attention to the statute in the respect named.

X.   The tenth exception is analogous to the preceding one.   It was argued in behalf of the respondent that she had a good cause for divorce against her husband; that she had consulted a lawyer upon that subject and had so learned from him, and that she would be entitled in case of divorce to one thousand dollars alimony, and therefore it was improbable that she would resort to murder to rid herself of her husband.   In answer to this argument it was claimed by the state that after she had learned her rights as to a divorce she had committed adultery, which would be a bar to divorce.   The charge of the court was that if the jury found that she had committed adultery, that fact would bar a di-

vorce. There was no error in so stating to the jury. There is no claim that it is not the law of this state, and there was no error in so stating to the jury, whether the fact appeared that she was cognizant of this legal principle or not.

In respect to the last two exceptions it might as well be claimed that the respondent could not be convicted unless she knew what the law was in respect to murder; that she was cognizant of the statute in that respect.

*The judgment of the Court is, that there is no error in the proceedings, and the respondent takes nothing by her exceptions.*