STATE *vs*. FRANK P. SLACK and ROMEO CLOUGH.

May Term, 1897.

Present: ROSS, C. J., ROWELL, TYLER, START and THOMPSON, JJ.

*State May Impeach Its own Witness—Inconsistent Positions—*
*Liberality in Cross-Examination.*

It is the duty of the State in criminal trials to produce and use all
witnesses within reach of process, of whatever character, whose
testimony will shed light on the transaction, whether it makes for or
against the accused.   Consequently it is not, like private parties,
precluded from impeaching the character of the witnesses it calls.

Whether selling liquor contrary to law be, or not, an infamous crime, the
prisoners having been allowed, against objection, to impeach a witness
for the State by proving his conviction of that offense, cannot object to
the impeachment of their own witness in the same way.

Although one of the questions put in cross-examination to a witness for
the prisoners was probably improper as an attempt to prove a conviction
otherwise than by the record, the testimony elicited did not go beyond
permissible bounds, in view of the liberality allowable in cross-examina-
tion for the purpose of finding out who and what the witness is.

INDICTMENT for assault with intent to rob.   Plea, not
guilty.   Trial by jury at the December Term, 1896, Windsor
County, *Munson*, J., presiding.   Verdict, guilty.   The
respondents excepted.

In the cross-examination of Orson Sargent, he was asked
in behalf of the State whether he had not been convicted in
the United States Circuit Court for selling liquor without a
government license, and replied that he had not, that the
matter had been settled up in some other way, but
exactly how he did not remember.

*G. A. Davis* and *D. A. Pingree* for the respondent Slack;
*W. E. Johnson* and *Wm. Batchelder* for the respondent Clough.

There was error in permitting the cross-examination of
Sargent as to the transactions in the United States Court.
*Smith* v. *Castles*, 1 Gray 108; I Green. Ev. 515, note.

The general rule precluding parties from impeaching their own witnesses applies to the State. *Dixson* v. *State*, 86 Ga. 754; *Com.* v. *Welsh*, 4 Gray 535; *Com.* v. *Hudson*, 11 Gray 64.

Evidence of Sargent's conviction of selling liquor contrary to law was inadmissible, because the crime is not one which involves moral turpitude. V. S. 1245; *Redway* v. *Gray*, 31 Vt. 292, 298; *State* v. *Hodgson*, 66 Vt. 144.

*J. G. Harvey*, State's Attorney, and *W. W. Stickney*, for the State.

ROWELL, J.　The State, in its opening, called Orson Sargent as a witness, to prove flight. The prisoners called him in defense, to prove innocence. On cross-examination, to impeach him, the State was allowed to ask him if he was not convicted in the United.States Circuit Court for selling liquor without a license, and he said he was not, that he settled it, but could not tell just how it was done. The State was also allowed, for the same purpose, to introduce a copy of the record of his conviction in 1883 for selling liquor contrary to law, and to prove by him that he was the person convicted.

Before said copy of record was offered and Sargent inquired of concerning it, the prisoners, on cross-examination of the State's witness Armstrong, had shown by him without objection that he had been convicted at that term of selling liquor contrary to law. They had also offered in evidence a copy of the record of his conviction of a similar offense at Norwich, which was objected to but admitted.

It was competent for the prisoners to show by Armstrong, as they attempted to do, and nearly if not quite did, as tending to show that he had a grudge against them, that he knew that they or one of them testified against him before the grand jury when he was indicted for selling liquor; and as no objection was made, they properly enough went

further, and perhaps could have anyway, and showed his conviction, as that would naturally tend to displease him still more. Counsel for the State probably regarded it all as admissible for the purpose indicated, and so did not object to it.

But the same cannot be said of the conviction at Norwich. That was objected to, and it does not appear that the prisoners or either of them had anything to do with procuring it, so evidence of it could have been offered and received only for the purpose of impeaching Armstrong because of the conviction. After this was done under objection, the principal question is, whether the prisoners can object to the State's impeaching Sargent in the same way, provided it could impeach him at all.

They say that the State could not impeach him at all, save as allowed by statute, because it first called him, wherefore he was its witness throughout. This is the general rule, but the question is whether it is applicable to the State in a criminal case.

As reason is the soul of the law, the maxim is that when the reason of a law ceases the law itself ceases. Or, as *Willes*, C. J., puts it in *Davies* v. *Powell*, referred to in argument in *Morgan* v. *The Earl of Abergaveny*, 8 C. B. 786, "when the nature of things changes, the rules of law must change too." Now the reason of the rule that a party cannot impeach his own witness is, that by calling him in proof of his case, he represents him to be worthy of belief, and that to attack his general character for truth after that, would be not only bad faith to the court, but, in the language of Buller, would enable the party to destroy him if he spoke against him, and to make him a good witness if he spoke for him. But cases of what are called instrumental witnesses do not come within the rule, certainly not fully if at all, for there the reason of the rule fails, as the law compels the party to call such witness, and therefore they are the witnesses of the law rather than of the party, and

it would be absurd to say that the party accredits a witness whom the law compels him to call; as absurd as *Chief Justice Willes* said in the case referred to, it would be to hold that deer were not distrainable when they had become a sort of husbandry, as horses, cows, sheep, and other cattle, because formerly they were not distrainable, as they were kept for pleasure and not for profit, and were not sold and turned into money as they were then.

In *Thornton's Executors* v. *Thornton's Heirs*, 39 Vt. 122, where it was held that a party calling a subscribing witness to prove a will could impeach him by showing prior contradictory statements, as the law compelled the party to call him, the court said that many, but not all, of the reasons for permitting that kind of impeachment applied to an impeachment of a general nature, but that the authorities had in many instances made a clear distinction between permitting an impeachment of the general veracity of a witness, and an impeachment by showing declarations of the witness inconsistent with his testimony, but decline to express an opinion as to the soundness of the distinction, but says that the fairness of holding a party estopped by reason of an act concerning which he has no choice, or by an indorsement that he does not make of a witness whom the law calls and makes current whether the party indorses him or not, may well be questioned. This strongly tends against any such distinction as the court says some of the cases make; and we think no such distinction can logically be made, for the same reason that makes the rule inapplicable to one mode of impeachment makes it equally inapplicable to all modes, as the different modes are but different ways of doing the same thing, namely, discrediting the witness, and they are equal in degree and alike in essence. The reason of the rule does not fail in part and stand in part—fail as to one mode of impeachment and stand as to another mode—it is indivisible, and stands or falls as a whole.

This view is sustained by *Williams* v. *Walker*, 2 Rich.

Eq. (S. Car.) 291: 46 Am. Dec. 53. There, in tracing the complainant's title, it became necessary to prove a mortgage. His solicitor stated to the court that the character of the attesting witness was such as not to entitle him to credit, and proposed to prove the mortgage by other testimony; but the court held that the attesting witness must be called, as he was at hand, and thereupon he was called, and testified that the mortgage was executed and delivered at a time subsequent to its date. The complainant then tendered testimony to impeach his general character, which was excluded, for that a party could not impeach his own witness. But the supreme court said that in the circumstances the complainant ought to have been allowed to show that the witness was undeserving of credit, referring to what Lord Ellenborough said in *The King* v. *The Inhabitants of Harringworth*, 4 M. & S. 350, that the testimony of a subscribing witness is not conclusive, for he may be of such a character as to be undeserving of credit, and then the party calling him may prove him such, and call other witnesses to prove the execution.

As the public, in whose interest crimes are prosecuted, has as much interest that the innocent should be acquitted as that the guilty should be convicted, we hold it to be the duty of the State to produce and use all witnesses within reach of process, of whatever character, whose testimony will shed light upon the transaction under investigation and aid the jury in arriving at the truth, whether it makes for or against the accused, and that therefore the State is not to be prejudiced by the character of the witnesses it calls. *State* v. *Magoon*, 50 Vt. 333; *State* v. *Harrison*, 66 Vt. 523.

This doctrine, carried to its logical result, exempts the State in criminal cases from the operation of the rule in question, and places it in the position of a party calling an instrumental witness, and for the same reason.

We are aware that in many, if not most, jurisdictions the rule is applied to the State in criminal cases, but it is upon the ground that the State stands like any other party, and

accredits a witness by calling him; from which we infer that they do not hold, as we do, that the State is bound to call all witnesses, but is at liberty to choose, and to call whomsoever it will.

We are the more satisfied with the conclusion here reached, because we think the State ought not to be hampered by such a rule. Prosecutions are carried on by the Government, through the agency of sworn officers elected for that purpose, who have no private interests to serve nor petty spites to gratify, but whose sole and only duty is, to faithfully execute their trust, and do equal right and justice to the State and to the accused. The course of public justice, thus directed, ought not to be obstructed by a rule without a reason. The ascertainment of the truth, which is the object of the prosecution, is of more consequence than the instrumentalities by which it is sought to be ascertained; and when an instrumentality becomes an obstruction to the course of justice, the State should be at liberty to remove it, and by trampling upon it if necessary.

But the prisoners further say that if the State was at liberty to impeach the witness, it could not do it by showing that he had been convicted of selling liquor, for that is not an infamous crime. But whether an infamous crime or not, the prisoners, against objection, were allowed to impeach the State's witness Armstrong in the same way, and therefore they cannot be heard to say that the State could not afterwards impeach in that way. This is a just application of the maxim that he is not to be heard who alleges things contradictory to each other; or, as Lord Kenyon once said, a man cannot be permitted to "blow hot and cold" concerning the same transaction, nor to insist at different times upon the truth of each of two conflicting allegations, according to the promptings of his private interest. Broom's Leg. Max. [*169]. Herman says that it has become axiomatic that a party must be consistent and not contradictory in the positions he takes, 2 Estop.

§ 1040. This maxim is of pretty general application in the law. Thus, in pleading, repugnancy vitiates. A witness who contradicts himself is thereby discredited. When one professes to act in an official or a professional character, it is conclusive evidence against him that he possesses such character. So if a party takes advantage of, or voluntarily acts under, bankrupt or insolvency laws, he is estopped as against persons who are parties to the same proceedings, to deny their regularity, 1 Green. Ev. § 207, (5th ed.) Indeed this principle is the foundation of equitable estoppels generally.

It was held in *Morgan* v. *Couchman*, 14 C. B. 100, not to be competent for counsel, after making a stand upon a point of law, to fall back upon the evidence, and afterwards say that the matter ought to have been submitted to the jury. So where on a former trial a party's counsel, in his presence, put the case on ground wholly inconsistent with the party's present testimony, it was held competent for the other party to show that fact. *Nye* v. *Merriam*, 35 Vt. 438. When a party introduces irrelevant testimony without objection, he cannot object to the other party's meeting it, if it has a moral tendency to render a claimed fact more probable. *Lytle* v. *Bond's Est.*, 40 Vt. 618. See also *Gotleib* v. *Leach*, Ib. 278.

So when a defendant pleads double, for the purpose of drawing on the plaintiff to demur, he cannot on demurrer, shift his position, and say that one of the matters pleaded as a defense is no defense. *Wright* v. *Watts*, 3 Q. B. 89.

A party who calls and uses a witness on his own behalf, admits his competency, and cannot object to him on that ground when called by the other party. *Linsley* v. *Lovely*, 26 Vt. 123, 133.

It does not comport with the propriety of things that parties should be allowed to occupy inconsistent positions in the trial of cases. Courts would soon become just objects of ridicule under such a practice.

As to the cross-examination of Sargent about his having been convicted in the Circuit Court, we do not think that the testimony elicited went beyond permissible bounds, though probably one of the questions was improper, for most of the authorities hold that the fact of conviction must be shown by the record. The modern tendency is to greater liberality of cross-examination for the purpose of finding out who and what the witness is. This is recognized in *State* v. *Fournier*, 68 Vt. 262, 270, where it is said that much latitude is allowed in cross-examining in regard to facts that bear directly upon the present character and moral principles of the witness, and therefore essential to the due estimation of his testimony by the jury, but that it rests largely in the discretion of the trial court how far the examination shall go. Mr. Justice Stephen lays it down as a general proposition that on cross-examination a witness may be asked any question that tends to shake his credit by injuring his character; but submits that the rule ought to be modified by adding that the trial court has a right to exercise a discretion in such cases, and to refuse to compel such questions to be answered when the truth of the matter suggested would not, in the opinion of the court, affect the credibility of the witness as to the matter to which he is required to testify.

This accords with Mr. Greenleaf's idea, and is probably the correct view, though it must be admitted that it is very difficult to draw the line with such precision as to make it easy in all cases to apply the rule thus modified, for in the realm of judicial discretion there is necessarily more or less doubt, notwithstanding, as Lord Coke says, that discretion is supposed to follow the right line of the law and not the crooked cord of public opinion, which some call law.

> *Judgment that there is no error in the proceedings of the county court, and that the prisoners take nothing by their exceptions. Let sentence be imposed and execution done.*