LOYAL M. WOOD AND ALVAH WOOD *v.* JAMES N. WILLARD ET AL.

*Declarations.    Plans.    Evidence.    Practice.*

Where the controversy between the parties in a suit is in respect to the location of the division line between their lands, and not in respect to the character and extent of the possession of their predecessors in title, they are not at liberty to prove the declarations of their respective grantors made at the time of the purchase as to where the true line was.

Where the defendant objected to a portion of the testimony when offered at the trial and the court decided to admit it, but the case was submitted to the jury under a charge to which no exception was taken, it can not be presumed that the court subsequently changed their opinion and made a different ruling upon it in the charge.

In the trial of actions involving title to lands, which involve an inquiry in reference to lines, with the usual accompaniment of marked trees and monuments, *it is held*, that a plan showing the relative position of the various lines, objects, &c., upon which the party relied, and verified by the person making it as correctly made, though not substantive independent evidence of itself, yet may be allowed to be exhibited to the jury, and used in evidence in connection with the evidence of the person making it, and all the evidence in the case relative to the various objects shown upon it, and may be taken by the jury when they retire to make their verdict.

TRESPASS in two counts,—*quare clausum* and cutting trees, and *de bonis asportatis* for the same property.  Plea not guilty, and trial by jury, December Term, 1861, BARRETT, J., presiding.

Upon trial the matter in controversy was as to the dividing line between lands owned by the plaintiffs and lands owned by James N. Willard, one of the defendants. The plaintiffs claimed title to the land in dispute by virtue of a deed from David H. Sumner to them, dated April 24, 1860. During the trial the plaintiffs offered to prove by the testimony of Loyal M. Wood, one of the plaintiffs, that on the day of their purchase of said Sumner, he, Sumner, went with him upon the premises, and along a portion of the line in dispute, and pointed out to him the dividing line between the lands in dispute, and proposed to show by Wood what line Sumner thus pointed out to him, and what he then said about said division line,—to which the defendants objected,—but the court overruled the objection, and permitted Wood to testify, and he testified that Summer went with him along a portion of the line as claimed by the plaintiffs, and also upon higher ground overlooking the said line, and that he pointed out to the witness an old fence in a swamp, as being very near the line, saying to the witness that the fence was not so far east as the line, but was nearly on the line. To the admission of this testimony the defendants excepted.

The fence thus pointed out by Summer, as stated by Wood, the testimony tended to show, was on, or very near, the line as claimed by the plaintiffs.

Sumner was introduced as a witness by the plaintiffs in a subsequent part of the trial, and testified in chief, that he had never examined, and had no means of knowing where his east line was (the line in dispute,) but supposed it to be in the vicinity of a certain wood road, and supposed there was a fence, and thought he recollected seeing one. On cross-examination, he stated that he did not know where the line ran between the lands in controversy.

It appeared by the testimony in the case that Sumner had never lived on the said premises sold by him to the plaintiffs, but that the lands had been occupied by tenants under him for many years.

The plaintiffs introduced one Hosea Doton, as a witness, who

testified that he was a surveyor, and had recently run the line
between the lands in controversy, and made a plan of the same,
at the request of the plaintiffs, and that said plan gave a fair
representation of the line he ran, and what there was about it,
as the result of accurate survey and observations, and that the
key, or explanations of said plan, show correctly what said plan
represents, ·as to objects, distances, and characteristics· of the
land.   On cross-examination he testified that what is represented
on his plan, north of Hartford town line, as to the names of lots
·and the line between them, was put there from statements made
to him, of the correctness of which he had no knowledge, except
that when he was on the ground to make observations pre-
liminary to drawing said plan, a fence was running from a cer-
tain white maple, northwardly, as represented on said plan, about
which he had no knowledge beyond the fact of its then being
there.

The testimony showed that the northerly terminus of the line
between the lands in dispute was on the town line between Hart-
ford and Hartland, and Doton testified that in making the survey
of the line in dispute, he was guided by a memorandum con-
taining a description, as he understood, of land conveyed by
Charles Willard to David H. Sumner, and by said Sumner's
deed to the plaintiffs.

The plaintiffs offered this plan and the memorandum from
which the survey was made, in evidence, to which the defendants
objected, but the court admitted the same and allowed them to
go to the jury,—to which the defendants excepted.

The testimony of the defendants tended to show the location
of the line in dispute and that it was not as claimed by the
plaintiffs.

The memorandum above referred to in connection with the
plan, was shown to have been furnished to Doton before he com-
menced his survey, and that he was guided by that in taking his
points of compass in making the survey.

No claim to hold the land in controversy by possession was set
up upon trial by either party.

The case was submitted to the jury under a charge to which no exception was taken. Verdict for the plaintiff. Exceptions by the defendant.

*Converse & French* and *A. Tracy,* for the defendants.

The court erred in permitting the plaintiff Loyal M. Wood, to testify as to the declarations of David Sumner, the plaintiff's grantor, as to where the dividing line was between the parties. Mr. Sumner *never occupied the land conveyed to the plaintiffs,* and is yet *living,* and was subsequently called as a witness by the plaintiffs. And there was no question as to the *extent and nature of his possession. Warner et al.* v. *McGray,* 4 Vt. 507, 510 ; *Harrison* v. *Blake et al ,* 3 Camp. 457 ; *Davis* v. *Fuller,* 12 Vt. 178, 189 ; *Carpenter* v. *Hollister et al.,* 13 Vt. 552 ; *Beecher* v. *Parmalee et al.,* 9 Vt. 352 ; *Smith* v. *Powers,* 15 N. H. 546 ; *Shepherd* v. *Thompson,* 4 *ib.* 213 ; *Sylvester* v. *Crapo,* 15 Pick. 92 ; *Norton* v. *Pettibone et al.,* 7 Conn. 319 ; *Waring* v. *Warren,* 1 John. 340, 343 ; *Jackson* v. *Bard,* 4 *ib.* 230, 1 Phil. Ev. Cowen & Hills' Notes p. 313, note 104, p. 318, note.

We insist that plans are not testimony and cannot be submitted to the jury. They are proper to be used on trial and by counsel in their arguments to the jury, for the purpose of explaining and illustrating the subject. For this purpose they have been long used ; it is but recently that it has been claimed at *Nisi Prius,* that they could be submitted to the jury. We find no authorities sustaining such use.

If a plan is ever allowed to go to the jury, it should be only in case where the land in controversy with all its surroundings is correctly delineated upon it.

*Washburn & Marsh,* for the plaintiffs.

The testimony of the plaintiff Wood was properly admitted for the purpose of showing the extent, or about the extent, of what the plaintiffs, at that time, believed to be the *quantum* of their purchase. And the very fact that to the charge of the court there was no exception taken whatever, leaves the presumption

to be, as the fact was, that this testimony was set right before the jury, and properly explained to them in the charge, and permitted to have only its legitimate and proper weight with the jury. *Northfield* v. *Plymouth*, 20 Vt. 582.

The plan and memorandum referred to were properly admitted.

POLAND, CH. J.   The plaintiffs and defendant Willard were proprietors of adjoining lands and the whole controversy between them in this suit was as to the location of the division line between their lands. ' Upon the trial one of the plaintiffs, against the defendants objection, was allowed to testify to the declaration of Sumner his grantor, made at the time of his purchase, as to the true location of the line; that it was where the plaintiffs now claim it.   It hardly needs to be said that as a general rule the law will not permit a party to prove his own declarations in his own favor, neither will it permit the declarations of third persons, not parties to the suit, to be used as evidence.   A party may prove the declarations of his adversary in the suit, and frequently is allowed to prove declarations of his adversary's predecessor in title made while he was in possession, against his right or interest, and they will have equal effect against the party as if made by himself.   There are cases where a party may prove his own declarations, or those of a former owner in his own chain of title, where they accompany an act, or a possession, as giving it explanation and character.   Where one has been in possession of land, and it becomes important to show the character of it, whether it was under a claim of right and adverse to another, or the extent of his claim, he is allowed to prove his own declarations and statements while in possession.   This is rather proving a fact, than a declaration, as the legal consequence and effect of his possession, if held under a claim of right in himself, may be altogether different from what it would be if he made no such claim.   This kind of evidence is received *ex necessitate*, as ordinarily it could not be determined by the mere appearance and acts of one in possession, whether he was occupying in his own right or in subservience to the right of another;

and what right and to what extent he claims, can generally be known only from his declarations.    And where it becomes important for a party to show the character and extent of the possession of his own predecessor in title, he may prove his declarations in like manner.    If therefore on this trial the plaintiffs had claimed that the line between them and the defendants had become established by occupation, or acquiescence, so that it became material to ascertain to what line his predecessor Sumner occupied or claimed, during the period of his ownership, the declarations or claims of Sumner while in possession, would have been competent evidence for him in the case.

But the exceptions show that the case was put upon no such ground, and no such claim made by either party, but both rested upon the line of division made by the conveyances which severed the ownership of this lot.

The plaintiff was not therefore at liberty to prove his own declaration, or that of his predecessor Sumner, as to where the true line was, any more, than he could prove such declarations in his own favor to establish any other fact which might be in litigation.

The other party might prove his declarations, or Sumner's while he was owner, against him, but he could not prove them in his favor.

These ideas will be found fully supported we believe, by the cases of *Beecher* v. *Parmalee*, 9 Vt. 352 ; *Carpenter* v. *Hollister et al.*, 13 Vt. 552 ; *Smith* v. *Powers*, 15 N. H. 546, and others too numerous to be referred to in support of doctrines so elementary.    It is said by the plaintiff's counsel in argument, that this testimony was not offered or admitted for the purpose of showing where the line was, but for the purpose of showing the extent of their purchase.    But the only issue in the case, was, as to where the true line of division was, and the exceptions do not show that the evidence was offered or received for any other purpose than to support the issue made between the parties.    There was no occasion to show the extent of the plaintiffs purchase ; that was shown by the deed to them, and was to

be determined by evidence of where the line run which the deed called for as the eastern boundary.

It is insisted also that if this evidence was improperly admitted, still as the exceptions show that the case was submitted to the jury by a charge to which no exception was taken, it must be presumed that the court in the charge either instructed the jury to wholly disregard this testimony, or else limited it by instructions, so that the defendants were satisfied, and therefore did not except. This is claimed to follow from the decision in *Northfield* v. *Plymouth*, 20 Vt. 582. But it will be seen by examination of that case that the jury were expressly in-instructed to disregard those portions of the deposition which had been allowed to be read, to which objection was taken by the defendant.

The loose practice which prevailed to some extent upon the authority of that case, of admitting every thing offered in evidence, with the hope of making it all right in the charge, is sharply, and I think justly, criticized by Judge PIERPOINT in the subsequent case of *Conn. & Pass. R. R. R. Co.* v. *Baxter*, 32 Vt. 805, and the authority of that case itself considerably limited within what had been supposed to be its legal scope.

But in the present case there is nothing in the exceptions to show that this evidence was not fully submitted to the jury, as it appears to have been received as legal testimony tending to show the true location of the line, and when the attention of the court had been distinctly called to it by a specific objection, and they had decided to admit it, it seems to us a strange proposition to claim that we ought to presume that the court subsequently changed their opinion and made a different ruling upon it in the charge. If it could be, and was cured in the charge, it ought to appear so in the exceptions, and would we believe if such were the fact. It would be a novelty we think to require that bills of exceptions, where the exceptions reserved are only to the admission of evidence, should state that this ruling was not changed in a subsequent part of the trial, and that the jury were not instructed to disregard it, or else that the exception itself was gone.

Wood et al. v. Willard et al.

If we were able to say that this testimony though inadmissible, still could not have prejudiced the case of the defendants, we should not be bound to reverse the judgment for that reason, but on a careful examination of it, we do not feel justified in saying that it could not have done so.   It is not enough to allow us to disregard the introduction of improper evidence, that it might not have been injurious to the party against whom it was given ; we must be able to say that it could not.   For this reason we think the judgment must be reversed.

In relation to the plan·offered by the plaintiffs ·and allowed to go to the jury ; the exceptions say that it was offered in evidence and admitted to go to the jury.   We understand from this that it was allowed to be exhibited to, and examined by the jury, and taken with them when they retired to make their verdict, but we do not understand that it was held to be evidence except in connection with the evidence of Mr. Doton the surveyor who made it, and testified to its correctness, or that it was held to be substantive independent evidence of itself.   In the trial of actions of ejectment, or other actions involving the title to lands, which involve an inquiry in reference to lines, and perhaps several different lines, with all the usual accompaniments of marked trees, and monuments of all sorts, and frequently the location and course of fences and streams, and the 'general conformation of a considerable territory, it is often utterly impossible by mere verbal description of witnesses, to give to jurors, many of whom are wholly unaccustomed to such matters, any definite idea of the matter in controversy, or any correct notion of the relative position of all the· various objects that become subjects of inquiry.

Hence from the very necessity of the case, it has always been practised for parties to procure plans or maps of such localities to be made by persons having more or less skill in such work, showing the relative position of the various lines, objects, &c., upon which the party relied, and when verified by the person making it as correctly made, to be allowed to be exhibited to the jury and used in evidence in connection with the evidence of

7

the person making it, and all the evidence in the case relative to the various objects shown upon it.  If such use cannot be made of it, then there is no use at all in having such plans or maps made.  The defendants' counsel say "they are proper to be used on trial before the jury, and by counsel in their argument to the jury for the purpose of explaining and illustrating the subject," but still they object to their going to the jury. I confess I do not understand what is meant by this.  If the jury are not to see them at all, then they are of no use at all, if they are to see them, then it is proper they should have them before them till the case is ended by a verdict.  It is doubtless true as urged, that these plans do not usually make a fair presentation of the whole case.  The party who procures a map or plan to show his side of the case, generally procures to be placed upon it such lines, marks, fences, and objects of various sorts, as make in favor of himself, and such as make against him, are either wholly left out or shown with so much less prominence, as to attract but small attention.  But this evil is usually balanced by a similar work upon the other side.

If a party presenting a plan gives testimony tending to show that all that is upon it, is correctly placed there, he must be allowed to use it, and could not be precluded from doing so because there were many other things it does not show, which it should, to make it a fair representation of the whole case. We do not see how a party can be prevented from using an unfair plan, any more than he can from using an unfair witness.

If a plan were presented, which had various things placed upon it, which the party gave no evidence to establish, the court would not allow it to be used as a means of getting such things before the jury without proof, and probably if a plan were produced on trial, which upon the evidence proved to be really a caricature of the true case, the court in their discretion might refuse to allow it to be kept before the jury.  We have not been able to see any thing in this plan, which required the court to refuse to let it go before the jury.

I may be allowed to say that my whole professional and

official connection with legal practise, has been in a part of the state where trials of this sort are much more frequent than in the older portions, and that never until the question was raised last year in *Harlow* v. *Green*, in Orange county did I hear it questioned but that plans were proper to be introduced in evidence on the trial of such cases, and that the jury were to have them for examination during the trial, and also when they retired to make up their verdict. In that case the question was made and decided in accordance with what we now hold.

The practise has been the same in suits for damages on roads, where plans and profiles have been used.

So in patent suits, or other cases involving questions in relation to machinery, drawings, and models, have always been received and used before the jury to explain and illustrate the evidence, and to my knowledge the right to do so was never questioned.

Judgment reversed.