HENRY AND DANIEL POWERS *v.* BENJAMIN SILSBY AND ASA SMITH.

*Evidence.    Boundary Line.    Declarations of Deceased Persons.*

The declarations of a deceased person as to the location of a disputed boundary, otherwise admissible, are not rendered inadmissible by the fact that they were made off the land, and because the line referred to was not actually pointed out or shown.

The question was, which of two lines, fourteen rods apart, was the true range line. One survey of the 5th division of lots was made in 1806, and one in 1808, and one of these lines was run in one, and the other in the other, of said years; and the one run in 1808, was conceded to be the true line. In 1830 G., then an old man, since deceased, an original proprietor, and one of the committee appointed to procure the survey of 1808, and who made the report as recorded, and for a while, at an early day, the custodian of the proprietors' records and plans, living three or four miles from the 5th division of lots, and having one in the same range as the defendants' lot, assigned to him as one of the proprietors, told the witness, while at G.'s house to make a copy of the plan of surveys made by direction of the proprietors, that when he should survey in the 5th division, he would find two range lines between the lots, and that the west line was the true one. *Held,* that this declaration was admissible.

EJECTMENT to recover a parcel of land in Lunenburgh.    Plea, the general issue.    The case was tried at the March term, 1868, STEELE, J., presiding.

All the facts are stated in the opinion of the court.

*George N. Dale,* for the defendants.

Although it appeared upon the trial, that Samuel Gates, whose sayings are objected to, was one of the original proprietors of the town of Lunenburgh, and, when the survey was made, was one of the committee who directed it to be made, yet he did not act in reference to the actual survey, and there is no evidence that he ever went on to this division of land.    We object to these sayings, because this opinion of Gates's was not properly established in his mind.    It was not founded on facts actually within his knowledge.    We may fairly infer that he imbibed this opinion from hearing these two lines discussed, for aught that appears in the case.    There is no evidence that he ever went on to the land, or that he knew from observation the location of either the east or the west line.    The case finds that he did nothing about the survey, except as a member of the committee.    Whatever report he made, he made from the field-book.    The declaration of a person

who is not shown to have peculiar knowledge respecting the boundary in dispute, is totally inadmissible. *Bender* v. *Pitzer,* 27 Pa., 333. If sayings off the land are admitted, there is no limit to the rule. In the case of *Wood et al.* v. *Willard et al.,* 37 Vt., 377, the persons whose sayings were attempted to be introduced, went upon the land, and *pointed out* the tree claimed to be the corner, and the court declare, among other elements of the foundation for their admission, that they were "*made when upon, or in the immediate vicinity of, the boundary referred to, and pointing it out.*" The court repeat the following language from *Smith* v. *Powers,* 15 N. H., 546: "*It was in evidence that he* (John Rowell) *pointed out the boundary.*" And this sentence is so connected with the remainder of the opinion in the last named case, as to indicate that it was a fact indispensable to the admission of the evidence. In *Bender* v. *Pitzer,* above cited, it is held that "the declarations of a deceased person as to the locality of a boundary between adjoining owners, are admissible only where such person either made the survey, or was himself an adjoining owner, and *pointed out the line* to the witness on making the declaration." "The unsworn statement of a person who had lived on the land in dispute, in relation to the corners of an old survey, was held not to be admissible evidence." *Clements* v. *Kyles,* 13 Gratt., 468. So the declarations of a deceased chain-carrier with regard to the course of a survey, were held inadmissible. *Ellicott* v. *Pearl,* 10 Peters, 412.

*Jonathan Ross, Henry Heywood,* and *Ray & Ladd,* for the plaintiffs, cited *Wood et al.* v. *Willard et al.,* 37 Vt., 377, and cases there cited.

The opinion of the court was delivered by

PROUT, J. This is an action of ejectment, brought by the plaintiffs to recover the seizin and possession of a parcel of land in the 5th division of lots in the town of Lunenburgh. On the trial in the county court, it appeared that the plaintiffs owned the north part of lot No. 15 in said division, and that the defendants owned the whole of lot No. 14 in the same division. These lots

adjoin, No. 14 being west of No. 15, and they are divided by a range line. There are two ancient lines within fourteen rods of each other, running nearly north and south, and one of them is the true range line between these lots, the other, as the case finds, having been always treated as of no account, by the original proprietors. The question in the county court was, which of these lines was the true one. They were run, one in 1806, the other in 1808, and it was admitted by both parties, that the line run in 1808 was the true one. On these exceptions, the question is as to the admissibility of the testimony of Samuel Bell, a witness, called by the plaintiffs, who testified to the declaration of one Samuel Gates, who was an old man in 1830 or 1831, when the alleged declaration is said to have been made, and who has since, and before the trial, deceased. Gates was an original proprietor of the town of Lunenburgh, and was one of a committee appointed by the proprietors to procure a survey of the lots to be made. At an early day, when the proprietors' clerk went off, Gates had possession of the records and plans relating to the lands in town, and owned a lot in the same range, and resided only a few miles (three or four) from it. In 1830 or 1831 the witness Bell, a surveyor, went to the house of Gates for the purpose of making a plan of the surveys that had been made in the town of Lunenburgh, and while there for that purpose, Gates made the declaration " that, when he (Bell) should survey in the 5th division, he would find two range lines between Nos. 14 and 15, and that the west line was the true one." Evidence of this declaration, the defendants insist, was inadmissible. The subject has recently been before the court in *Wood et al.* v. *Willard et al.*, 37 Vt., 377, and the rule there laid down, may be regarded as settled. In that case, it is held " that the declarations of deceased persons who had actual knowledge as to the location of a disputed boundary, or who, from their connection with the property itself, or their situation and experience in regard to such boundaries and the surveys thereof, had peculiar means of knowledge, so that it may be fairly inferred that they had actual knowledge of the same, made at a time when they had no interest to misrepresent, and made when upon, or in the immediate vicinity of, the boundary referred to,

and pointing it out," are admissible evidence as to the location of such boundary, when, from lapse of time, there can be no reason-able probability that evidence can be obtained from those who had actual knowledge on the subject. The reason and necessity of the rule are shown in that case. Counsel do not question or controvert it, but insist that the case in hand is not within the principle of that decision, because, in this case, the declaration objected to was made off the land, and because the line referred to was not actually pointed out or shown. This relates rather to the effect of the declaration as evidence, than to its admissibility. The character of the evidence is of the same general nature as that objected to in the case cited. If the relation of the deceased person who made the declaration, was such, either in respect to the lots in question, or the range line dividing them, that it might be inferred that he had a knowledge of the boundary line, and he was not led by his interest to misrepresent in regard to it, and by his declaration he so pointed it out as to indicate to the mind of the witness the line he referred to, we are unable to understand why the evidence, upon the facts, was not admissible. The case, in some of its features, is much stronger than *Wood et al.* v. *Willard et al.* (*supra*). In that case, the witness's knowledge of the disputed boundary was based upon and inferred from the fact that he had formerly owned the premises, but actually showing or point-ing out the corner. In the present case, we have the concession that the line run in 1808 is the true line. Gates, whose declara-tion was made use of on the trial, was an original proprietor, had possession of the records and plans for a time, and was one of a committee who procured the survey of 1808 to be made. Being, also, the owner of a lot in the 5th division, which was bounded by the same range line, and which was not only the boundary of his own, but the common boundary of the defend-ants' and many other lots, he must have had the same knowledge of its location the owners of the lots affected, were supposed to have. As to that he had peculiar means of knowledge, because he was interested in the line, and from his " situation and experi-ence" as connected with it. He participated in procuring it to be made and run, resided near the lots, and was familiar with the

records relating to them. If in any case the declaration of a deceased person supposed to have had a knowledge of the location of a disputed boundary, from his situation and connection with the property, is admissible in evidence, the declaration in question in this case is, as it was against the interest of the person who made it, if the line claimed by the defendants, is the true one ; and we do not understand why its admissibility should depend upon the fact that the declaration was made upon the land, and in connection with actually showing or pointing it out. The principle is the same. That he could do off and away from the premises, as well as upon or near them ; and the ancient line, boundary or monument could he made equally certain by reference or description as to its locality, and as situated with reference to then known existing lines or monuments, as by actually showing or pointing out where it was. This is often and always done in court, and is the only way, ordinarily, in which a jury are informed as to the relative location of land lines which are in controversy. The Chief Justice, in the opinion in the case referred to, did not intend thus to qualify the rule, but was remarking upon the question in the light of the facts appearing in that case, as is obvious from an examination of it. The cases he cites and refers to, from Connecticut and in 6 Peters's Reports, do not put the admissibility of evidence of this character upon the distinction urged, but upon the broader ground of a necessity for its use, and as tending to prove the fact in controversy.

It is not questioned that the declaration of Gates, referring to the west line, related to the line run in 1808. He was one of a committee appointed by the original proprietors to procure that line to be made, as already remarked. He had no connection with the survey of the line run in 1806. This being so, the judgment of the county court must be affirmed.