No. 8608.

## TURNER v. BUCHANAN ET AL.

NEGLIGENCE.— *Verdict.*—*Special Findings.*—*Contributory Negligence.*—In a suit for negligently placing a steam engine in a street, whereby the plaintiff's team was frightened, and he was injured, the jury found a general verdict for the plaintiff, and, in answer to special questions submitted, that both of plaintiff's horses had previously run off; that the engine was calculated to scare a team not disposed to be frightened; that the plaintiff saw the engine in time to avoid danger, but did not apprehend any.

*Held,* that the facts specially found did not show contributory negligence on the part of the plaintiff, and were not inconsistent with the general verdict, and that judgment for the defendant thereon was erroneous.

From the Huntington Circuit Court.

*J. C. Branyan, C. W. Watkins* and *M. L. Spencer,* for appellant.

*W. H. Trammel* and *T. L. Lucas,* for appellees.

MORRIS, C.—The appellant brought this suit against the appellees to recover damages for injuries alleged to have been caused by the negligent and wrongful acts of the appellees.

The complaint is in two paragraphs. The first states that the appellees, on and prior to the 4th day of June, 1878, caused to be placed and maintained in one of the public streets of the city of Huntington, known as Fort Wayne street, a portable steam engine, thereby, in violation of an ordinance of said city, which is set out and made part of this paragraph, partially obstructing the passage of persons and teams along and upon said street; that said portable engine, so placed and maintained in said street, was liable to frighten teams being driven along the same; that, on said day, the appellant's team, hitched to a wagon, while on said street, took fright at said engine so unlawfully placed and maintained by the appellees on said street as aforesaid, and, in spite of the appellant, who was in said wagon and driving said team, and without fault on his part, became unmanageable and ran away with great speed and violence, throwing the appellant from his said

wagon, with great force and violence, whereby he was greatly and permanently injured and crippled for life, etc., to his damage $4,000.

The second paragraph of the complaint was similar to the first, though stating the facts in greater detail, and omitting the ordinance of said city set out in the first paragraph.

The defendants appeared and demurred separately to each paragraph of said complaint. The demurrers were overruled.

The appellees then filed a general denial to the complaint, and the case was submitted to a jury for trial, who returned a verdict against the appellees and in favor of appellant, for $900, and the following answers to the following interrogatories, properly submitted to them by the court, at the instance of the appellees:

"1. Was the plaintiff's team in the habit of running away? Ans. No.

"2. Had both of the horses that plaintiff was driving previously run off? Ans. Yes.

"3. Had plaintiff's team tried to run off almost immediately previous to the time plaintiff complains of in this cause? Ans. No.

"4. Did the plaintiff see the portable engine before he was near to it, and in time to have avoided the danger? Ans. Yes; but apprehended no danger.

"5. Did the portable engine possess any qualities calculated to scare a team that was not disposed to frighten? Ans. Yes.

"6. Did the foot-crossing of the street and the rattling and jamming forward of the plaintiff's load of staves, in crossing the same, tend to scare and frighten plaintiff's team? Ans. Yes, it added more fright to the team.

"7. Was not the plaintiff's injury caused by his jumping off his loaded wagon? Ans. Yes.

"8. Would plaintiff likely have been hurt so badly, had he remained upon his wagon and load? Ans. Do not know.

"9. Would an ordinarily prudent man have jumped off of

his wagon when going at the rate of speed the plaintiff's team was? Ans. Yes, in like circumstances."

The appellees moved the court for judgment upon the special findings of the jury, on the grounds, as stated in the motion, " that the special findings are inconsistent with the general verdict of the jury, and show that the plaintiff contributed to his injury." The court, over the objection of the appellant, sustained the motion and rendered judgment for the appellees, to which the appellant properly excepted.

The appellant moved the court for judgment in his favor upon the general verdict, which motion was overruled, and he excepted.

The appellant also moved the court for a new trial, on the ground that the court erred in overruling his motion for judgment upon the general verdict. It can hardly be believed that the appellant in fact desired a new trial. However this may be, his motion states no cause for which a new trial could be granted, and it will not be further noticed.

Are the special findings of the jury inconsistent with the general verdict? It will not be pretended that the answer to the first, third, fifth or ninth interrogatories is at all in conflict with the general verdict. By their answers to those interrogatories, the jury find that the appellant's team was not in the habit of running off; that said team had not, immediately before the accident, tried to run off; and that the appellees' engine was calculated to scare teams not disposed to be frightened. Nor is there anything in these answers that shows, or tends to show, negligence on the part of the appellant.

The answer to the second interrogatory stated that the horses of the plaintiff had both run off; but when, and under what circumstances, is not stated. There is nothing wrong in driving a team along the streets of a town or city, which had, years before, run away. Nor is there anything in such use of such a team, from which negligence can be inferred. Though the horses may have, many years before, run away, the team, at the time of the accident, may have been gentle

and easily managed. There is nothing in the answer to the second interrogatory inconsistent with the general verdict, or that, taken in connection with the general verdict, shows the appellant to have been guilty of contributory negligence. *Foshay* v. *Town of Glen Haven*, 25 Wis. 288 (3 Am. R. 73).

In answering the fourth interrogatory the jury find that the appellant saw the portable engine in the street in time to have avoided it, but that he apprehended no danger. Believing, as the jury find the appellant did, that there was no danger in driving his team along the street and past the engine improperly placed in the street by the appellees, he was not guilty of negligence in attempting to do so. For aught that appears, he was driving the team with due care and had it under his control. The mere fact that he could see the engine in the street did not impose upon him the duty of abandoning the street, or of stopping to inspect the engine, and determine, at his peril, whether it would probably frighten his team. *Jones* v. *Housatonic R. R. Co.*, 107 Mass. 261; *Reeves* v. *Delaware, etc., R. R. Co.*, 30 Pa. St. 454; *Humphreys* v. *Armstrong County*, 56 Pa. St. 204. The appellant, though he saw the engine, was not bound to anticipate all the perils to which he might be exposed in driving past it, or to refrain absolutely from pursuing his usual course on account of unseen and unknown, though probable, risks. Some risks, such as arise from obstructions in highways, are taken constantly by the most prudent of men, and where, as in this case, the party pursues the usual course, believing it to be safe, he is not guilty of contributory negligence. It was a question for the jury, and by their general verdict they have found upon this point in favor of the appellant, and with it this special finding is not irreconcilable, or necessarily inconsistent.

To the sixth interrogatory the jury answered, that the foot-crossing on the street, and the "jamming forward" of the load of staves, added to the fright of the team. The loading of the appellant's wagon with staves was not an act of negligence on his part, and that the running of the team, the rapid

motion of the wagon, and the consequent rattling of the staves, and the displacement of the load, should have added to the fright of the team, is probable; but, as this was the result of the original fright caused by the wrongful act of the appellees, the appellant should not be held responsible.

There is nothing in this answer inconsistent with the general verdict, or that shows negligence on the part of the appellant.

In answer to the seventh interrogatory, the jury say that the appellant's injury was caused by his jumping from his wagon. But this must be taken in connection with the general verdict. It is not to be expected that a person, acting under the excitement and confusion of mind incident to the appellant's situation, will always be able to do the best thing that, under the circumstances, could possibly be done. If he acts as ordinarily prudent men would act in view of the emergency, that is all the law requires. There is nothing, therefore, in this finding inconsistent with the general verdict. The special answer to the ninth interrogatory, which is upon this point the same as the general verdict, finds that a prudent man, acting under the same circumstances, would have done just what the appellant did. *Eldridge* v. *Long Island R. R. Co.*, 1 Sandf. 89; *Ingalls* v. *Bills*, 9 Met. 1; *Railroad Co.* v. *Aspell*, 23 Pa. St. 147; *Frink* v. *Potter*, 17 Ill. 406.

There is nothing in the answer to the eighth interrogatory. The jury say that they do not know that the appellant would have been so badly injured had he not jumped from the wagon; this is all.

The answers to the interrogatories, taken singly or collectively, are consistent with the general verdict, and do not show that the appellant was guilty of contributory negligence.

PER CURIAM.—It is ordered, upon the foregoing opinion, that the judgment below be reversed, at the costs of the appellees, and that the court be instructed to render judgment upon the general verdict in favor of the appellant and against the appellees, for the amount found by the jury, with interest

thereon from the return thereof until judgment shall be rendered in accordance with this instruction.

## On Petition for a Rehearing.

Morris, C.—The appellees ask a rehearing in this case, on the ground that, as they contend, the opinion reversing the judgment below is contrary to the uniform rulings and decisions of this court upon the questions involved.

Upon the trial, the jury returned a general verdict in favor of the appellant, with answers to interrogatories submitted by the appellees.    It is insisted that the answers returned by the jury to the interrogatories are irreconcilable with the general verdict, and must control it; that the answers to the interrogatories show that the appellant was guilty of negligence contributing to the injury of which he complained, and that the appellees were, therefore, entitled to judgment upon these findings, notwithstanding the general verdict.

The answers to the interrogatories, which are claimed to be inconsistent with the general verdict, are:

"Had both of the horses that plaintiff was driving previously run off?    Answer.    Yes.

"Did the portable engine possess any qualities calculated to scare a team that was not disposed to frighten?    Answer. Yes.

"Did the plaintiff see the portable engine before he was near to it, and in time to have avoided the danger?    Answer. Yes; but apprehended no danger."

The answer to the first of the above interrogatories, obviously, is not in any way inconsistent with the general verdict, which found the appellant to be without fault and free from negligence.    The answer does not find at what time, how many years before the accident, the horses had run off.    They might have run off years before, and yet have been perfectly gentle and manageable at the time of the accident.    And this answer, in connection with the general verdict, must be held to mean this and nothing more.

The answer that " the portable engine had qualities calculated to scare a team not disposed to frighten," is not only not inconsistent with, but confirmatory of, the general verdict.

If the engine had no qualities calculated to frighten teams, it would be difficult to support a verdict which gives a party damages for the alleged fright of a team by such an engine. The general verdict implied just what the jury found in answer to this interrogatory. It can not, therefore, be said to be inconsistent with the general verdict.

The jury, in answer to the fourth interrogatory, say: " The plaintiff saw the portable engine before he was near to it, and in time to have avoided the danger, but he apprehended no danger."

Is this answer irreconcilable with the general verdict? and does it show that the appellant was guilty of contributory negligence?

The jury, by this answer, do not find that the appellant saw or knew the danger to which he might be exposed in passing the engine, wrongfully placed and maintained in the street by the appellees. On the contrary, it is expressly found that he did not—that he apprehended no danger. He saw the engine, the obstruction, in the street—this was all—and apprehended no danger from passing it. It is of the very nature of an obstruction in a highway or street, which is calculated to frighten teams, to be visible. For anything that appears, teams had been driven daily past the engine, which had been wrongfully in the street for months. Teams may be driven past such an obstruction without taking fright. It could not be foreseen or predetermined whether the team would at all times, or this particular time, take fright at the obstruction, though calculated to frighten teams. The appellant was, therefore, not guilty of negligence in attempting to drive his team past the obstruction in question. It was a risk he might take without negligence on his part. The law upon this subject is well stated by Shearman and Redfield on Negligence. They say, sec. 31 : " Nor even where the plaintiff sees that the defendant has been

negligent, is he bound to anticipate all the perils to which he may *possibly* be exposed by such negligence, or to refrain absolutely from pursuing his usual course on account of risks to which he is *probably* exposed by the defendant's fault. Some risks are taken by the most prudent men; and the plaintiff is not debarred from recovery for his injury, if he has adopted the course which most prudent men would take under similar circumstances." This doctrine has often been applied, and is peculiarly applicable to cases like this. The obstruction is seen in the street; there is room to pass it; it is not known that it will cause fright, and the traveller, with due care, knowing the temper of his horses and having control of them, believing there is no danger, attempts to pass. In doing this, he is not guilty of negligence; he takes the risk which a prudent man would take, and nothing more. Such an assumption of risk affords no excuse for the wrong-doer—the party who wrongfully placed the obstruction in the street.

In the case of *Judd* v. *Fargo*, 107 Mass. 264, where a farmer had left a sled with tubs upon it in the highway, calculated to frighten horses, at which the plaintiff's horse took fright in being driven past it, and was killed, it was not pretended, or even claimed, that the plaintiff was guilty of contributory negligence, though the obstruction could be seen for a considerable distance.

In the case of *Jones* v. *Housatonic R. R. Co.*, 107 Mass. 261, the same doctrine is held. It appeared in this case that the railroad company, at the crossing of the highway, maintained a derrick for the purpose of loading and unloading freight. The derrick had an upright shaft twelve feet high, and a horizontal arm fourteen feet long, so located that the arm might be swung north, and then the freight suspended from it would hang about four feet within the located limits of the road, but ten or twelve feet from the travelled track of the same. There was conflicting testimony as to how far the derrick could be seen, some of the witnesses said ten or twelve rods; others that it could be seen only for a short distance. The

evidence showed that the plaintiff's horse had shied at a box car some distance from the derrick; that, shying, the horse turned south, and was then frightened by the derrick.. The court held the plaintiff entitled to recover.

In the case of *Foshay* v. *Town of Glen Haven*, 25 Wis. 288, it was held that the defendant was liable for an injury resulting from the fright of a horse at a large black log left in the highway by the defendant, though not in the travelled path of the road. The horse was frightened as the defendant drove past. Though the obstruction was visible, it was not claimed that the plaintiff was guilty of negligence in driving past it, with due care. *Morse* v. *Richmond*, 41 Vt. 288; *Johnson* v. *Belden*, 2 Lans. N. Y. 433. In this case the court quote the rule as laid down by Shearman and Redfield above, and say that it is fully sustained by the case of *Clayards* v. *Dethick*, 12 Q. B. 439.

The appellees say, that the question in Wisconsin and the New England States is governed by the statutes of those States. True, in most of those States there are statutes making towns liable for the non-repair of highways, but there is no statute in any of them upon the subject of contributory negligence. The law upon that subject, the only question here involved, is the common law, the same law that is in force in Indiana.

It is said that the decision of this court, in the case of *Thompson* v. *Cincinnati, etc., R. R. Co.*, 54 Ind. 197, is opposed to the ruling in this case. The decision in the former case rests upon the fact that the danger was not only apparent, but believed and known to exist, by the plaintiff, at the time the accident occurred; that, with such knowledge, and believing the passage of the street to be dangerous, he ordered his servant to get out of the wagon and take the horse across the street. The court very properly held that, under such circumstances, the plaintiff assumed the risk and proceeded at his peril. In this case, though the engine was seen, the danger was not apprehended or believed to exist. The facts

upon which the decision rests in the case cited are absent in the case now before us.

It is also said that the case of *President, etc.,* v. *Dusouchett,* 2 Ind. 586, is opposed to the conclusion reached in this case. In that case it was held that, where the plaintiffs alleged in their declaration that they knew the location and situation of a boiler before the rise of the river, and that, after the rise of the river, they could not see it and ran their boat upon it, they were shown to have been guilty of negligence, which would defeat a recovery. The court simply held that, where a party runs his boat voluntarily upon a known obstruction, he can not recover for the injury sustained by the collision. There is nothing in this decision inconsistent with the opinion in this case.

There are many cases holding, that where a party carelessly drives upon a known obstruction, wrongfully placed in the highway, or against a vehicle wrongfully occupying the wrong side of the street, he can not recover for an injury sustained by such collision, because of his own negligence. But this class of cases, which may be found in the reports of every State, and in all the text-books, has no application to this case, for the reason that here the danger was not foreseen; the appellant did not know that his team would take fright, but believed the contrary, and, so believing, with due care, attempted to pass the obstruction. He was, as the general verdict finds, free from fault.

In the case of *Thomas* v. *Western U. T. Co.,* 100 Mass. 156, the court say: "Because there is an obstacle to proceeding" on a highway, "it does not follow that it is not consistent with reasonable care to attempt to proceed." In *Horton* v. *Ipswich,* 12 Cush. 488, it was held that, if a party knew that a road was obstructed, but not so as to indicate to him that he could not pass it with safety, and he met with injury while proceeding with due care, he might recover.

The petition for a rehearing is overruled.