CLARENCE J. HATHAWAY *v.* MITCHELL GOSLANT.

October Term, 1904.

Present: ROWELL, C. J., TYLER, MUNSON, START, WATSON, and
POWERS, JJ.

Opinion filed January 26, 1905.

*Trespass—Cutting Trees— Treble ,Damages — Pleading—
Joinder of Counts—Election—Evidence—Leading Ques-
tions—Bill of Exceptions—Referring to Transcript—Ef-
fect—Cross-examination—Offer—Declarations of De-
ceased Persons Respecting Lines—When Admissible.*

V. S. 5020, which gives treble damages for cutting trees, creates no
right of action, but only gives cumulative damages for what was,
and still is, actionable at common law.

In trespass for cutting and drawing away trees, the original declara-
tion declared for treble damages. Before trial the plaintiff, with-
out objection, and without terms being either claimed or imposed,
filed a new count for the same acts of the defendant declaring for
single damages only. *Held* that the issue on each count was the
same; that defendant was not entitled to costs to the time of the
filing of the new count, under V. S. 1693; and that the delay of
the court till the close of all the evidence before it compelled the
plaintiff to elect on which count he would stand could not have
been prejudicial to the defendant.

In trespass for cutting and drawing away trees, it was not error—
and if error, it was harmless—to allow the plaintiff to testify that,
when defendant called upon him for the purpose of fixing the
damages, and the plaintiff refused to talk about a settlement, the
defendant said to him, "That he had generally found in such cases
a man willing to do something, and if I was a gentleman he
thought I would;" it appearing that defendant did not except to
the admission of the testimony that he called upon the plaintiff
for said purpose, but excepted only to the admission of the testi-
mony showing his said comment upon plaintiff's refusal to talk
upon the subject.

A ruling of the trial court permitting a leading question is not review-able, unless it appears from the record that it was ruled, as matter of law, that the question was not leading.

The objection that a question is leading will not be considered in this Court, when the record does not show that objection to have been made in the court below.

When an official transcript of the evidence, so far as it bears upon the admissibility of certain expert testimony, is referred to and made a part of the bill of exceptions, but is not furnished the Supreme Court, that Court cannot say that the witness was not qualified to testify as an expert, or that the court below did not so find.

In trespass for cutting and drawing away trees, a witness for the plaintiff testified, on direct examination, as to the cost of cutting, hauling, sawing, and shipping the lumber from the land in dispute, and that hardwood drawn to the mill in the winter would be stuck up in the spring and remain until August or September. It did not appear that the witness ever saw the lumber or knew anything about its quality. *Held*, it was not error to exclude the question, on cross-examination, whether the hard wood lumber was such as witness would send to market in the form of boards, or whether it was only fit for chair stock, or the question, "Is there a risk during the summer to run of fire?"

In trespass for cutting and drawing away trees, when the plaintiff's evidence tended to show that he was keeping the trees in question to have them grow and finally to cut them into building lumber; that some years before he drew about 20,000 feet of lumber into a certain mill; it was not error to exclude defendant's offer to show that this lumber was still in the mill yard, and to show its condition as to soundness, and that it was got out for building purposes.

To reserve an available exception to the exclusion of testimony from a witness produced by the excepting party, an offer must be made stating what the witness would testify to, and when no offer was made, and the record does not show which party produced the witness, error does not appear.

In trespass for cutting and drawing away trees, when, as bearing on the value of a certain ash tree in question, the defendant's evidence tended to show that the boards that were sawed therefrom were poor boards, and that one Jewett had the boards to bank his house, it was not error to exclude the offer of the defendant

to show by himself, that he did let Jewett have some ash boards to bank his house, the offer not showing that the boards he let Jewett have came from the tree in question, or that he let Jewett have them before the controversy arose.

When a transcript of the evidence is referred to and made part of the bill of exceptions, for the purpose of determining the admissibility of evidence, but is not furnished the Supreme Court, that Court does not have all there is of the bill of exceptions before it.

In trespass for cutting and drawing away trees, plaintiff was allowed, subject to defendant's exception, to show the cost of cutting, hauling, sawing, and shipping to Boston of lumber from the land in controversy. The official transcript of the evidence was referred to and made part of the bill of exceptions to determine the admissibility of this evidence, but was not furnished. *Held*, that error did not appear.

Cross-examination to test the accuracy, veracity, or credibility of a witness, or to shake his credit by impeaching his character, is, to a large extent, within the discretion of the trial court.

In trespass for cutting and drawing away trees, when it appears, from the cross-examination of a witness called by the defendant, that at some time a case was tried in which the defendant and one Lane were parties, it is within the discretion of the trial court, and not an abuse of such discretion, to allow said witness, on further cross-examination, to be asked, "Did you testify in that case to the effect that you were up to see Lane, and that you had some talk with him that you were an important witness in that case, and his paying you if you would be out of the State at the time of the trial?" and to answer, "Yes, I saw Mr. Lane and talked with him relative to that."

The objection, that "the subject matter of the examination, as inquired about, was not admissible," presents no question as to the qualification of the witness to testify about the matter concerning which he is interrogated.

The rule, which allows the declarations of deceased persons in respect of boundaries to be given in evidence, is an exception to the rule which excludes hearsay evidence; and under it, such declarations may be received as evidence, though they are not a part of the *res gestae;* and their admission is not dependent on whether they accompany and give character to some act not affecting the declarant's title.

In an action of trespass for cutting trees involving the location of the boundary of plaintiff's farm, plaintiff was properly allowed to testify that his father told him, in the house on the farm in question, a year or two before he died, that a certain tree, described in the evidence and in the line as claimed by the plaintiff, was a line tree in the line between his land and the disputed territory, it appearing that the declarant was dead, and the plaintiff having previously testified that there never was, to his knowledge, any dispute as to this line up to the time of cutting the timber in question.

In an action of trespass, counsel for plaintiff, in argument to the jury, said, "Remember that this is a game of concealment by the defence." The Court, in allowing an exception, said that counsel "argues that as an inference." No transcript of the evidence having been furnished the Supreme Court. *Held*, that error did not appear; that the testimony may have been such as to justify the inference.

In trespass for cutting and drawing away trees, the defendant excepted to the charge of the court on the subject of exemplary damages, and to the charge on the question of exemplary damages as to the cutting by the defendant of trees between the two lines in dispute. The portion of the charge quoted in the bill of exceptions contained nothing about the trees between the two lines; and defendant's counsel stated in their brief that, "The charge as to exemplary damages was in accordance with the law of this State." No transcript of the evidence was furnished, and the defendant did not except to the refusal of the court to charge as requested, but only to the charge as given. *Held*, that no question as to the charge on the subject of exemplary damages is before this Court, and that the defendant cannot now insist that the question of exemplary damages should not have been submitted to the jury.

TRESPASS for cutting and drawing away trees from plaintiff's land. Plea, the general issue. Trial by jury at the September Term, 1903, Washington County, *Haselton,* J., presiding. Verdict and judgment for the plaintiff. The defendant excepted.

The evidence on both sides showed that the plaintiff's farm is bounded on the east by the town of Marshfield, on the

south by land of Fred Lamberton, on the north by land of Henry Dow.

The exceptions state that: "There was no controversy regarding any line of the plaintiff's land, or of Dow's, except the line between Dow and the plaintiff. That line was in controversy. The plaintiff claimed that it went northerly of the line claimed by Dow. The points of controversy on the Marshfield town line were six rods apart, between Dow and the plaintiff. The dispute was as to the timber cut between those two lines.

The evidence on both sides tended to show that Dow sold the defendant all the standing timber on a part of his farm. Dow's farm is bounded on the east by Marshfield line, south by plaintiff's farm, and north by Peacham line."

The exceptions state that when the plaintiff's father told him that the ash tree was a line tree, both were in the house on the plaintiff's farm. The plaintiff testified: "The circumstances were these: I was then contemplating building a house; I was walking around through the woods to look to see if I could find any hard wood timber suitable for finishing purposes. I found this tree, remembered it, and I asked father if he would allow me to have it. He asked me to describe the tree and its location, and I did so as well as I could at the time, and told him it was marked—described to him the marks; he then said it was a marked tree between him and Dow, and he did not wish to cut it."

The exceptions further state that: "The evidence of the defendant tended to show that the boards that were sawed from the ash tree in question were poor boards, not suitable for market, and that a man by the name of Jewett had the boards with which to bank up his house, and Jewett knew they were the boards that came from this ash tree. The de-

fendant then offered to show, by himself, that he did, in fact, let Jewett have some ash boards with which to bank his house, which was excluded, and the defendant excepted."

The plaintiff's evidence tended to show that this ash tree was a line tree between Dow and himself, while the defendant's evidence tended to show that it was on Dow's land, a few feet from the line that Dow claimed to.

The larger part of the timber cut by the defendant and for which this suit was brought was conceded to have been cut from the land of the plaintiff.

The evidence of the plaintiff tended to show that ash lumber was worth $40 per thousand.

*J. P. Lamson* for the defendant.

The testimony of the defendant that he did in fact let Jewett have some ash boards with which to bank his house, should have been admitted. It bore upon the value of the ash tree for the cutting of which the plaintiff was seeking to hold the defendant. Whatever renders a claimed fact probable or improbable is admissible. *Armstrong* v. *Noble,* 55 Vt. 428; *Randall* v. *Preston,* 52 Vt. 198.

*F. L. Laird* and *H. C. Shurtleff* for the plaintiff.

START, J. The action is for cutting and drawing away trees from the plaintiff's land. The original declaration is for treble damages. Before the trial, the plaintiff filed a new count in trespass for cutting and taking away the trees. At the commencement of the trial the defendant requested the court to direct the plaintiff to elect whether he would go to trial upon the original or upon the new count. The court, in overruling the motion, said that, at the close of the evidence, the motion could be renewed. To this ruling the defendant

excepted.    At the close of the evidence, the defendant re-
newed his motion; and the court held that the plaintiff could
not go to the jury upon both counts, and directed him to elect
whether he would go to the jury upon the amended or orig-
inal count.    Both counts are for the same acts of the defend-
ant, and it is clear that the delay of the court in directing the
plaintiff to elect could not have been prejudicial to the defend-
ant.

After verdict for the plaintiff, the defendant moved that
the costs be restricted to the time of the filing of the new
count.    The original declaration declared in trespass for treble
damages, and the new count is the same, except that it does
not declare for treble damages.    In so far as appears, no
objection was made to the filing of this count, and no terms
were claimed or imposed for so doing.    Both counts are for
the same acts of the defendant; and, while the original dec-
laration declared for treble damages, the issue upon which
the right of action depended was no different from that made
by the new count.    *Davis* v. *Cotey,* 70 Vt. 120, 39 Atl. 628.
By omitting to declare for treble damages in the new count,
recovery upon that count was limited to single damages; but
this limitation upon the right of recovery under that count
did not, as a matter of legal right, entitle the defendant to
terms, or to a restriction of the plaintiff's costs.    The statute
giving treble damages for cutting trees does not create the
right of action, but only gives cumulative damages for what
was and still is actionable at common law.    *Montgomery* v.
*Edwards,* 45 Vt. 78.    The original and new counts being for
the same acts, it cannot be said that the defendant prevailed
upon any issue; therefore, he was not entitled to costs under
V. S. 1693.

The defendant called upon the plaintiff for the purpose of fixing the amount of damages, but the plaintiff refused to talk about a settlement and referred the defendant to his counsel. The plaintiff was allowed to testify, subject to the defendant's exception, that, on this occasion, the defendant said to him, "That he had generally found in such cases a man willing to do something, and if I was a gentleman he thought I would." There is nothing in the remark excepted to that in any way reflects upon the defendant, nor does it contain an admission of a liability on his part. The defendant did not except to the admission of the testimony tending to show that he called upon the plaintiff and wanted to fix upon the amount of the damage, but to the admission of testimony showing his comments upon the plaintiff's conduct in refusing to talk with him upon the subject. We think there was nothing in these comments that could prejudice the defendant; that, if there was error in admitting the testimony, the defendant has no reason to complain; and that the error was harmless.

The plaintiff was allowed, subject to the defendant's exception, to testify in regard to the prospective growth of the trees in question, and in view of such growth, as to their value upon the stump. The defendant now insists that the case does not show that the witness had ever had any experience or had made any observations respecting such trees. It is a sufficient answer to this objection to say that the official transcript of the testimony given by the witness upon this subject is referred to and made a part of the bill of exceptions, and that the defendant has not furnished us with this transcript; and we cannot say that the witness was not qualified to testify as an expert upon this subject, nor that the court did not so find. The defendant also insists that the question asked this witness was leading and should have been excluded for this

reason; but it does not appear that he objected to the question on this ground, nor does it appear that the court did not allow the question to be answered as a matter of discretion. Unless it appears that the court below ruled, as a matter of law, that the question was not leading, its ruling is not revisable in this Court.

One Lamberton was called by the plaintiff and testified as to the cost of cutting, hauling, sawing and placing upon the cars at Marshfield the lumber on the land in dispute, and on cross-examination, was asked whether the hard wood lumber in question was such as he would send to market in boards, or whether it was only fit for chair stock. The court excluded the question and the defendant excepted. The question was properly excluded. The witness did not testify as to the quality or value of this or any other lumber; therefore, the inquiry was not proper cross-examination. Also, it does not appear that the witness saw this lumber or knew anything about its quality. This witness also testified that hard wood drawn to the mill in the winter would be stuck up after sledding broke up, toward spring, and there remain until August or September; and, on cross-examination by the defendant, he was asked the following question: "Now is there a risk during that summer to run of fire?" This question was also properly excluded. As before stated, the witness was not examined by the plaintiff respecting the value of this or any other lumber on the stump or in the market; and the inquiry was not proper cross-examination. The plaintiff claimed, and his evidence tended to show, that he was keeping the trees in question to have them grow and finally to cut them into building lumber and build some houses, and that some eight or nine years ago he got some twenty thousand feet of lumber into Lamberton's mill. The defendant offered to show that this

lumber was still in the mill yard, and also offered to show its condition as to soundness, and that it was got out for building purposes. This evidence was properly excluded. The question as to what became of the lumber was immaterial, and was not relevant to any issue in the case.

The evidence tended to show that some of the plaintiff's men told one Lamberton not to tell the defendant's men that they were cutting on the defendant's land; and the defendant offered to show their reason for so doing, but did not accompany his offer with a statement of what their reason was. It does not appear but that this evidence was introduced by the defendant, nor that the witness by whom he sought to show the reason was not called by him. If the witness was produced by the defendant, it was the defendant's duty to state in his offer what the witness would testify to. It not appearing what testimony the witness would have given if he had been allowed to answer, we cannot say that there was error in excluding the offer, nor that its exclusion was in any way prejudicial to the defendant; therefore, error does not appear.

The defendant's evidence tended to show that the ash tree, which was in question, was sawed into boards and used by one Jewett in banking his house; and the defendant offered to show, by himself, that he did let Jewett have some ash boards to bank his house. The offer was excluded. In this there was no error. The defendant did not offer to show, by himself, that the boards he let Jewett have were sawed from the tree in question, nor did he offer to show that he let Jewett have the boards after the tree was cut and before a controversy had arisen respecting it. Without such showing, the offered evidence would not render his claim respecting the value of the tree more probable.

The plaintiff was allowed, subject to the defendant's objection and exception, to show the cost of cutting, hauling, sawing and shipping to Boston lumber from the land in question; also what certain kinds of lumber sold for in Boston. The official transcript of the evidence is referred to and made a part of the bill of exceptions, in so far as it bears upon the admissibility of this evidence, and it has not been furnished. Without a transcript of this evidence, we cannot say that its admission was error. It may have been so connected with other evidence that it was admissible. When a transcript of the evidence is referred to and made a part of the bill of exceptions, for the purpose of determining the admissibility of evidence, and is not furnished, we do not have all there is of the bill of exceptions before us.

One Goslant was called and used as a witness by the defendant, and it appearing from the cross-examination that at some time a case was tried in which the defendant and one Lane were the parties and that Goslant was a witness for the defendant in that case, the following question was asked and answered, against the objection and exception of the defendant: "Q. Did you testify in that case to the effect that you went up to see Lane and that you had some talk with him about—that you were an important witness in that case, and his paying you if you would be out of the state at the time of the trial? A. Yes. I saw Mr. Lane and talked with him relative to that." The court below could, in its discretion, allow the question to be asked and answered; and, it not appearing that there was an abuse of this discretion, its ruling will not be reversed by this Court. In Stephen's Digest of the Law of Evidence, Chase, 2 ed., 320, it is said that, when a witness is cross-examined, he may be asked any question which tends to test his accuracy, veracity, credibility, or to

shake his credit, by injuring his character, and that witnesses have been compelled to answer such questions, though the matter suggested was irrelevant to the matter in issue, and though the matter was disgraceful to the witness; but it is submitted that the court has the right to exercise a discretion in such cases, and to refuse to compel such questions to be answered when the truth of the matter suggested would not, in the opinion of the court, affect the credibility of the witness as to the matter to which he is required to testify. In *State* v. *Fournier and Cox,* 68 Vt. 270, 35 Atl. 180, it is said: "Much latitude is allowed counsel in cross-examination of witnesses in regard to the facts which bear directly upon their present character and moral principles and therefore essential to the due estimate of their testimony by the jury; questions like whether a witness has been in the state's prison, and similar ones, are often allowed, although collateral to the main issue but relevant to the character of the witness. But such cross-examination is, to a great extent, within the discretion of the trial court, and is for that court to say how far the cross-examination shall proceed."

In *State* v. *Slack and Clough,* 69 Vt. 493, 38 Atl. 313, the court, in holding that the cross-examination of the witness about having been convicted in the Circuit Court did not go beyond permissible bounds, said: "The modern tendency is to greater liberality of cross-examination for the purpose of finding out who and what the witness is."

In *McGovern* v. *Hays and Smith,* 75 Vt. 108, 53 Atl. 328, the court, in holding that the witness, for the purpose of discrediting him as such, might on cross-examination be asked if he had been convicted of selling intoxicating liquor and confined in the house of correction therefor, said: "The question of the reception of such evidence must be determined by the

sound discretion of the trial court, and we are satisfied that there was no abuse of discretion in permitting the examination complained of."

The plaintiff's evidence tended to show that a certain ash tree, which was one in question, was a line tree between his farm and Dow's, while the defendant's evidence tended to show that this tree was on Dow's land, a few feet from the line that Dow claimed to; and that he purchased the tree of Dow. The evidence also tended to show that the plaintiff's father owned the land in question for many years, and until his death in 1886. The plaintiff was called as a witness, and the following questions and answers were admitted, against the objection and exception of the defendant: "Q. Now, speaking about this ash tree, I ask if at some time your father told you that was the line tree between his land and the land which is called the Dow land in this trial? A. Yes, sir. Q. And when was this? A. A year or two before he died in 1886. He died in 1886, and I mean a year or two before that." The plaintiff had previously testified that there never was, to his knowledge, any dispute as to this line up to the time of the cutting of the timber in question in 1901. In the court below, the objection to this evidence was general, and in this Court, the only reasons urged by the defendant why the evidence should have been excluded are, that the first question was leading, and that "the subject-matter of the examination as inquired about was not admissible." It does not appear that the defendant objected to the question because it was leading, nor that the court did not allow the question to be answered as a matter of discretion; and for these reasons the objection that the question was leading is not sustained. The objection, that "the subject-matter of the examination as inquired about was not admissible," presents no question respect-

ing the qualification of the plaintiff's father to speak upon the subject of the line in question; and we have only to consider whether the subject-matter was a proper subject of inquiry. The admissibility of declarations to show boundaries has been considered by this Court in several reported cases, and while the holdings have not been entirely uniform, as will be seen from an examination of the cases of *Wood* v. *Willard,* 36 Vt. 82; *Turner Falls Lumber Co.* v. *Burns,* 71 Vt. 354, 45 Atl. 896; *Evarts* v. *Young,* 52 Vt. 329; *Childs* v. *Kingsbury,* 46 Vt. 47, and *Powers* v. *Sibley,* 41 Vt. 288, we think the better reasoning is found in those cases where it is held that declarations similar to those in question are admissible; and we hold that the questions which were objected to related to a proper subject of inquiry. In *Wood* v. *Willard,* 37 Vt. 377, it is held, that the declarations of deceased persons who had actual knowledge as to the location of a disputed boundary, or who, from their connection with the property itself, or their situation and experience in regard to such boundaries and the surveys thereof, had peculiar means of knowledge of the same, made at a time when they had no interest to misrepresent, and made when upon or in the immediate vicinity of the boundary referred to, and pointing it out, are admissible evidence as to the location of such boundary, when, from lapse of time, there can be no reasonable probability that evidence can be obtained from those who had actual knowledge on the subject. But this rule has been somewhat modified by subsequent holdings. Thus, in *Powers* v. *Sibley,* before cited, it is held, that it is not necessary that the declarant be upon or in the immediate vicinity of the boundary in dispute, and pointing it out, in order to make his declaration admissible. In this case the declaration was held admissible, notwithstanding it did not accompany and give character to any act affecting the

declarant's title.   In *Childs* v. *Kingsbury* and *Turner Falls Lumber Co.* v. *Burns,* before cited, it is held, that the rule that the declarant must have no interest to misrepresent does not require that he be wholly disinterested in the subject.   In both of these cases it is held, that the fact that the declarant is the owner of the land at the time the declaration is made does not show that he is interested to misrepresent; and that declarations made by such owners of land, who have since deceased, are admissible.   In *Wood* v. *Willard,* 36 Vt. 82, it is said, that there are cases where a party may prove his own declarations, or those of a former owner, in his own chain of title, where they accompany an act, or a possession, as giving it explanation and character; and in *Evarts* v. *Young,* before cited, it is said that a party is not allowed to show his own declarations, or the declarations of those through whom he claims title, in his own favor, unless such declarations accompany and give character to some act affecting his title, and so become a part of the *res gestae.*   The rule thus stated is a rule of general application, and allows declarations to be shown when they accompany and give character to acts, as a part of the *res gestae,* when the act itself is admissible as evidence; and declarations respecting boundaries may be made under circumstances that bring them within this rule, but their admission is not controlled by it.   The rule which permits a party to show the declarations of a person who has deceased, respecting boundaries, is an exception to the rule that excludes hearsay evidence; and under it, such declarations may be received as evidence, notwithstanding they are not a part of the *res gestae,* and their admission is not dependent on whether they accompany and give character to some act affecting the declarant's title.   *Wood* v. *Willard,* 37 Vt. 377.

Mr. Shurtleff, counsel for the plaintiff, in argument, said to the jury: "Remember that this is a game of concealment

by the defence." The court, in allowing an exception, said: "Mr. Shurtleff argues that as an inference." The testimony may have been such as to justify the inference. We have not been furnished with a transcript of the evidence, and cannot say that it did not tend to show all that was claimed by the counsel. If it did, the argument was proper; if it did not, it was incumbent upon the excepting party to show in some way that the evidence did not justify the inference. In the absence of such showing, it will not be presumed, for the purpose of finding error, that the evidence did not tend to show the concealment claimed by counsel.

The defendant excepted to the charge of the court upon the subject of exemplary damages, and to the charge on the question of exemplary damages as to the cutting by the defendant of trees between the two lines. The charge upon this subject is quoted in the bill of exceptions, and it appears therefrom that the court said nothing about the trees between the two lines; and the defendant's counsel state in their brief that, "The charge as to exemplary damages was in accordance with the law of this State." The defendant did not except to the refusal of the court to charge as requested, nor to its omission to give other or further instructions. He only excepted to the charge as given; and it being conceded by the defendant that the charge as given was correct, no question respecting the charge upon this subject is before us. But the defendant now insists that the case was not one where exemplary damages could be recovered, and that the question of exemplary damages should not have been submitted to the jury. It does not appear that this question was raised in the court below; but, if it was, we cannot, without a transcript of the evidence, say that it was not correctly ruled upon by the court below. The bill of exceptions, after reciting what the

defendant's evidence tended to show respecting the cutting of trees and the circumstances of the cutting, states that the plaintiff's evidence was in some respects contradictory of this; and the official transcript of the evidence on these points is referred to, and is to control. We have not been furnished with a transcript of the evidence thus referred to; and, if the question of exemplary damages was properly before us, we could not, without this transcript, say that the case was not one where exemplary damages could, in the discretion of the jury, be awarded.

*Judgment affirmed.*